**SPRINGFIELD TELEVISION, INC., a Missouri Corporation, et al., Appellants,**

v.

**The CITY OF SPRINGFIELD, MISSOURI, a Municipal Corporation, et al., Appellees.**

No. 71–1590.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 18, 1972.

Decided June 12, 1972.

Richard Farrington, Farrington, Curtis & Strong, John K. Hulston, Springfield, Mo., for appellants.

Joseph E. Stevens, Jr., Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Gary S. Dyer, Kansas City, Mo., Neale, Newman, Bradshaw & Freeman, F. B. Freeman, Don G. Busch, Springfield, Mo., for appellees.

Before MATTHES, Chief Judge, and LAY and ROSS, Circuit Judges.

LAY, Circuit Judge.

This is the second appeal to this court arising out of the competitive struggle over the grant of a CATV franchise by the City of Springfield, Missouri, to the International Telemeter of Springfield Corporation. The plaintiffs are: (1) Springfield (Mo)-CATV, Inc., a Missouri corporation authorized by its corporate charter to operate a community antenna television (CATV) system; (2) Springfield Television, Inc., and Independent Broadcasting Company, Inc., two separate television broadcasting stations licensed by the FCC to operate separate television stations in the City of Springfield, Missouri; and (3) four individuals who are registered voters and taxpayers of the City of Springfield. The first named plaintiff (Springfield (Mo)-CATV) is owned in equal parts by the other two corporate plaintiffs and was formed specifically for the purpose of obtaining the franchise to provide the City of Springfield with CATV service. The four individuals named are stockholders and some are directors of the two broadcasting stations.

The amended complaint alleges that the Springfield City Council passed two resolutions and Special Ordinance No. 15121 by which a franchise was granted to International Telemeter. This ordinance was originally challenged on several grounds, basically, that it was invalid because it sought to regulate an area of interstate communication preempted by the Communication Act of 1934 and certain specified FCC regulations; that it was repugnant to the United States Constitution since it placed an undue burden on interstate commerce; and that it violated the Establishment Clause of the First Amendment. A pendent state claim challenges the grant of the franchise as exceeding the city's authority because of failure to comply with the public election requirement contained in the enfranchising provision of the Springfield City Charter. Plaintiffs seek a declaratory judgment declaring the ordinance invalid and an injunction prohibiting the City of Springfield, its City Council members and International Telemeter from enforcing or implementing the ordinance and franchise grant.

The suit was originally dismissed by the district court on the grounds that federal jurisdiction was lacking. On appeal this court reversed with Chief Judge Matthes observing:

"The district court has jurisdiction to explore fully appellants' preemption claim and, *because of that*, to consider also the other allegations of deprivation of rights protected by the United States Constitution. As to the remaining claims arising under the Missouri constitution and laws and the Charter of the City of Springfield, the district court should be guided on remand by the principles expressed in United Mine Workers of America v. Gibbs [383 U.S. 715], *supra*, 721–729, 86 S.Ct. 1130 [16 L.Ed.2d 218], con-

cerning Federal pendent *juridiction of state claims."* Springfield Television, Inc. v. City of Springfield, Mo., 428 F.2d 1375, 1380–1381 (8 Cir. 1970). (Emphasis ours.)

On remand the parties limited the factual and legal issues to be presented to the district court by stipulation. According to this agreement only the two federal constitutional claims and the pendent state claim concerning compliance with the city charter were submitted for decision. The district court again dismissed the suit finding that both the corporate and individual parties lacked the standing necessary to raise the submitted federal constitutional issues. However, the district court "in order to complete the record and attempt to avoid the necessity of another remand" passed on the merits of all of the issues presented in the stipulation. The district court found there was no legal merit to either of the federal claims raised and further held that the election requirement of the city charter did not *apply since* the CATV system was not a "public utility" within the meaning of the election provision. Thus, the district court based its dismissal of the complaint on the merits as well. This appeal followed.

Although we require a reversal of the judgment on the non-federal claim, we must first be satisfied that there exists a justiciable federal claim to support pendent jurisdiction. Although we left the issue of standing open on the first appeal, we indicated sufficient facts had been alleged in the complaint so as to provide standing on the federal preemption issue. The corporate plaintiffs allege a direct economic injury [1] and it is our appraisal that the FCC regulations seek to protect the "zone of interest" within which these plaintiffs operate.[2] See Association of Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and Investment Company Institute v. Camp, 401 U.S. 617, 620, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971).

The district court apparently felt that since the parties chose not to present the preemption issue on remand, standing could only be measured in terms of the submitted federal constitutional issues.[3] However, this ruling misconstrues the effect of the stipulation. As we view the stipulation, it served only as an agreement to put aside and not press the preemption issue as a possible basis of recovery. Cf. United States v. Reading Co., 289 F.2d 7, 9 (3 Cir. 1961). The effect of such a stipulation is that plaintiffs have chosen to forgo their opportunity to litigate the preemption issue and are willing to rely solely on the remaining claims. Such an agreement in no way removes the jurisdictional predicate upon which this court originally based its decision. Thus, the standing which plaintiffs had on this federal claim continued after the remand

---

1. The standing of Springfield (Mo)-CATV is separately challenged on the ground that this plaintiff has not shown a direct and immediate injury by reason of the grant of the CATV franchise to International Telemeter. Defendants contend that present FCC regulations relating to cross-ownership preclude this plaintiff, as it is presently owned, from operating a CATV system within the Springfield area. See F.C.C. Regulation § 74.1131, "Diversification of Control Over Communications Media" 47 C.F.R. 399 (July 7, 1970). In view of our finding of standing for the other corporate plaintiffs, we need not pass on this question. See also note 4, infra.

2. The Federal Communications Commission has recognized the interest of every broadcasting license in paragraph 76 of its First Report and Order in Dockets 14895, 15233; wherein it said:
   "Every station affected is entitled to appropriate coverage and non-duplication benefits—irrespective of the specific damage which any individual CATV system may do to the financial health of the individual system."

3. In view of our determination of standing on the preemption issue and since we resolve this case on the pendent claim, it is unnecessary to pass on the question of the plaintiffs' standing to raise the remaining federal claims.

and stipulation. However, even if the stipulation in effect dismissed the preemption claim from the lawsuit, under recent application of the principles relating to the exercise of pendent jurisdiction, we find that the state claim remained within the court's jurisdiction. See Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970);[4] Gray v. International Ass'n of Heat & F.I. and A.W.L. No. 51, 447 F.2d 1118 (6 Cir. 1971); Gem Corrugated Box Corp. v. National Kraft Container Corp., 427 F.2d 499 (2 Cir. 1970); cf. Ryan v. J. Walter Thompson Co., 453 F.2d 444 (2 Cir. 1971).

██ Having found standing on the federal issue we must now consider the appellees' complaint that the plaintiffs lack standing to raise the pendent issue of the validity of the ordinance's enactment. The city charter requires that every ordinance which grants a "public utility franchise" must be submitted to the vote of the electorate of the City of Springfield. The complaint alleges that CATV is a "public utility" within the meaning of the charter and that therefore Special Ordinance No. 15121 is invalid since it was not voted upon by the people before enactment. Plaintiffs' standing on this pendent issue does not depend upon whether the CATV franchise is in fact a "public utility franchise." Plaintiffs need only allege that they are within the zone of interests protected by the election requirement. Investment Company Institute v. Camp, 401 U.S. at 620, 91 S.Ct. 1091. We think they have done this here. The primary beneficiary of the election requirement is the electorate of the City of Springfield.[5] However, in line with the broad interpretation given by the Supreme Court to Section 4 of the Bank Service Corporation Act of 1962 in *Data Processing*, supra, and the expansive view taken of the protective scope of the licensing requirement at issue in Chicago v. Atchison, Topeka & Santa Fe R. Co., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed. 2d 1174 (1958), we find that the charter provision here may also be said to evidence an intent to protect these corporate plaintiffs' interest as well. Such an election provides competitors with an opportunity to campaign against enfranchising new enterprises.[6] We conclude this interest is protected by the charter provision and provides sufficient adversity to give standing here.

We turn now to the merits of the pendent claim.

Plaintiffs assert that the Special Ordinance which grants the franchise in question was invalidly passed since it

---

4. "We are not willing to defeat the commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim." 397 U.S. at 405, 90 S.Ct. at 1214.

5. There can be little doubt that the individual plaintiffs would have standing to challenge the ordinance. These individuals would not have standing to raise the federal preemption issue, but would seem to have sufficient interest to enable them to raise the First Amendment question. They challenge the extension of free CATV programming (required by the ordinance) to parochial schools. Presumably this would provide the individual plaintiffs with a sufficient "spirtual stake" to give standing to make this attack. See

*Data Processing*, supra, 397 U.S. at 154, 90 S.Ct. 827; Allen v. Hickel, 138 U.S. App.D.C. 31, 424 F.2d 944, 946–947 (1970). However, as we have indicated, we do not pass on their standing to raise this federal claim and we reach the merits of this issue based on the standing of the corporate plaintiffs only.

6. Although in a completely different context, it has been recognized:
    "[T]he untrammeled right of free expression of views as to candidates for office, through newspapers or other means of conveying the written or spoken word, and of the public in general to have free access thereto . . . is in fact one of the most valuable means of promoting purity and freedom in the electoral process. . . ." United States v. C. I. O., 77 F.Supp. 355 (D. D.C.1948), aff'd, 335 U.S. 106, 68 S. Ct. 1349, 92 L.Ed. 1849.

was not submitted to the vote of the electorate of the City of Springfield. Article XVII of the Springfield City Charter reads:

"Section 17.1. Granting franchises.

"All public utility franchises and all renewals, extensions and amendments thereof shall be granted only by ordinance. No such ordinance shall be adopted within less than thirty days after application therefor has been filed with the council, nor until a full public hearing has been held thereon. *No such ordinance shall become effective until it has been submitted to the electors and has been approved by a majority of the electors voting thereon.*

"No ordinance shall be submitted at an election less than sixty days after the grantee named therein has filed its unconditional acceptance of such franchise, and it shall not be submitted to a special election unless the expense of holding the election, as determined by the council, shall have been paid into the city treasury by the grantee. No exclusive franchises shall ever be granted, and no franchise shall be granted for a longer term than 20 years. No such franchise shall be transferable directly or indirectly, except with the approval of the council expressed by ordinance after a full public hearing." (Emphasis ours.)

The issue before us is whether the franchise granted to International Telemeter comes under the provision of the charter requiring a public election. The trial court held the charter provision inapplicable since CATV is not a "public utility." In so deciding the court makes reference to § 386.020 of the Missouri statutes, V.A.M.S. which defines those public utilities that are subject to the control of the Missouri Public Service Commission as "every common carrier, pipe line corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, heat or refrigerating corporation, and sewer corporation. . . ." Further support was drawn from the Ohio decision of Greater Fremont, Inc. v. City of Fremont,[7] 302 F.Supp. 652 (N.D.Ohio 1968), aff'd on other grounds sub nom. Wonderland Ventures, Inc. v. City of Sandusky, 423 F.2d 548 (6 Cir. 1970).

We recognize the existence of decisions of other courts[8] and rulings[9] which have held CATV systems are not public utilities. Similarly, there exist decisions holding that CATV systems are public utilities.[10] However, each of these decisions turns on the statutory

7. The district court in *Greater Fremont* found that the two characteristics of a public utility were (1) that the public has a great interest and need to receive the service, and (2) that for reasons of practical necessity, the operation must occupy a monopolistic or ologopolistic position in the market. 302 F.Supp. at 664–665. Both of these characteristics were found to be lacking in CATV. The definition of a public utility, however, was one *drawn from a decision of the Supreme Court of Ohio*, Industrial Gas Co. v. Public Util. Comm'n of Ohio, 135 Ohio St. 408, 413, 21 N.E.2d 166, 168 (1939).

8. See, e. g., Television Transmission v. Public Util. Comm., 47 Cal.2d 82, 301 P.2d 862 (1956); Cerrache Telephone Corp. v. Public Ser. Comm., 36 P.U.R.3d 278 (N.Y.Sup.Ct.1960); Re Seneca Radio Corp., 57 P.U.R.3d 67 (Ohio Pub. Util.Comm.1964); Vetere Perfect TV, Inc., 14 R.R. 2064 (Utah Pub.Serv. Comm.1956); In re Community Television Systems of Wyoming, Inc., 17 R.R. 2135 (Dist.Ct.Wyo.1958).

9. See Opinion of the Attorney General of the State of Arizona, Opinion # 55–206, 12 R.R. 2094 (1955); Opinion of the Attorney General of the State of New Mexico, Opinion # 5942, 10 R.R. 2058 (1954); Opinion of the Attorney General of the State of Washington, Opinion # 53–55, 14 R.R. 2059 (1954).

10. TV Pix, Inc. v. Taylor, 304 F.Supp. 459 (D.Nev.1968), aff'd 396 U.S. 556, 90 S.Ct. 749, 24 L.Ed.2d 746 (1970); Aberdeen Cable TV Service, Inc. v. City of Aberdeen, 176 N.W.2d 738, (S.D.1970), cert. denied, 400 U.S. 991, 91 S.Ct. 455, 27 L.Ed.2d 439 (1971); Waterville v. Bartell Tel. TV Systems, 233 A.2d 711 (Me.1967).

language involved defining a "public utility." Our decision is controlled by Missouri law.

In Woodmansee v. Kansas City, 346 Mo. 919, 144 S.W.2d 137, 139 (Mo.1940) (en banc) the Missouri Supreme Court held that although a business operation may not fall within the definition of a public utility under the Missouri statute it may still be considered such within the meaning of a city's charter. In Missouri each home rule city is given the right by statute to grant, regulate and control the exercise of any *public franchise* or *privilege* involving use of the streets or public ways of such city. Sec. 82.230 V.A.M.S. (1971). The City of Springfield, as a home rule city, has provided in its charter for the granting of *public utility* franchises (Article XVII) and for supervision by a Board of Public Utilities (Article XVI). Article XVI contains the definition of a public utility, which by reason of the *Woodmansee* case, supra, must be considered controlling here. That article provides:

> "The term 'public utilities' by way of description, *but not as a limitation,* shall include electric systems (and appurtenant steam heating apparatus and piping,) gas systems, water systems, transit systems and *public communication systems* (including all plants, apparatus, equipment and distribution facilities related to any such system,) or any other service or facility commonly considered to be a public utility or so declared to be by any statute, ordinance or court decision." (Emphasis ours.)

There can be no constitutional doubt that a state may include a community antenna television system within the meaning of a "public utility." TV Pix, Inc. v. Taylor, 304 F.Supp. 459 (D.Nev. 1968), aff'd, 396 U.S. 556, 90 S.Ct. 749, 24 L.Ed.2d 746 (1970). Thus, we need only decide here whether a CATV system is a "public communications system" within the meaning of the charter. The appellees claim that CATV is a "distribution" system rather than a "communications" system. Cf. Fort-

nightly Corporation v. United Artists, 392 U.S. 390, 399–400, 88 S.Ct. 2084, 20 L.Ed.2d 1176 (1968). It is argued that in order to be a communication system there must be two-way communication. We disagree with this analysis.

On April 23, 1965, the FCC released a Notice of Inquiry and Notice of Proposed Rule Making (1 F.C.C.2d 453, 30 Fed.Reg. 6078 (1965)) announcing its intent to regulate all CATV systems. And, in its Second Report and Order, 2 F.C.C.2d 725, 31 Fed.Reg. 4540 (1966), rules concerning the regulation of these systems were adopted. The Supreme Court has upheld these regulations based on the authority of the FCC to regulate all interstate "communications." United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968). In that decision it was said:

> "CATV systems, formerly no more than local auxiliaries to broadcasting, promise for the future to provide a *national communications system*, in which signals from selected broadcasting centers would be transmitted to metropolitan areas throughout the country." 392 U.S. at 164, 88 S.Ct. at 1998. (Emphasis ours.)

The opinion also points out that the parties were in agreement that CATV is a "system of communications" within the meaning of the Communications Act of 1934:

> "Respondents do not suggest that CATV systems are not within the term 'communication by wire or radio.' Indeed, such communications are defined by the Act so as to encompass 'the transmission of . . . signals, pictures, and sounds of all kinds,' whether by radio or cable, 'including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission.' 47 U.S.C. §§ 153(a), (b). These very general terms amply suffice to reach respondents' activities.

"Nor can we doubt that CATV systems *are engaged in interstate communication,* even where, as here, the intercepted signals emanate from stations located within the same State in which the CATV system operates." 392 U.S. at 168–169, 88 S.Ct. at 2000. (Emphasis ours.)

There should be a little doubt that the CATV system in the instant case is a "public communications system" within the meaning of that term as used in the Springfield City Charter.[11]

Appellees have also raised the argument that CATV is closely akin to radio and TV broadcasts and that since neither of these operations is treated as a public utility under the charter definition discussed above, the CATV system should receive similar treatment. We do not consider this fact to be determinative. Neither radio nor TV makes use of the public streets and ways in furnishing its service to the public. By contrast the CATV system here in question proposes to use the telephone lines and poles belonging to the Southwestern Bell Telephone Company as well as the streets and ways of the City of Springfield. Springfield is empowered by statute (§ 82.230 V.A.M.S.) to grant and control the exercise of all public franchises which make use of "the streets or public places of such city." The scope of the city's powers provides ample justification for the differing treatment these broadcasting operations receive. On this basis we conclude that because of the city's failure to comply with the election requirement of Article XVII of the City Charter in granting the CATV franchise to International Telemeter Corporation, the challenged ordinance was invalidly enacted and made no effective grant of the franchise to that corporation.

Appellees urge that should we reach the above conclusion, we need only require that they go back and submit the ordinance, as originally drawn, to a vote of the electors. We cannot agree. While this case has been pending the FCC has issued certain guidelines concerning the *maximum* franchise fees which a franchising authority can require of a franchisee. 37 Fed.Reg. 3276–3277 (Feb. 12, 1972). While these regulations do not establish a fixed ceiling, a percentage range of three to five percent was indicated to be the appropriate standard. The ordinance in this case goes far beyond the recommended amounts by requiring not only a lump sum fee of $100,000 by the grantee to the city, but also an annual payment of 12.1% of gross receipts with *minimum* monthly payments of $2,500 for the first twelve months of the franchise term and $6,000 per month for the remainder of the franchise period. Without passing on the validity of the ordinance under these standards, we find that the conditions upon which bids were solicited were so far removed from the present required standards that many bidders may have been turned away who today would be willing to make an offer. It may be that International Telemeter would no longer bid for the franchise under the new regulations promulgated by the FCC on February 12, 1972. In our view, the public interest will be greatly affected by the rate of the franchise fee since this burden will ultimately be borne by the consumer. Thus, since the specifications upon which bids were solicited are now suspect and since this goes to the very heart of the ordinance, we hold that any further attempt by the City of Springfield to grant a CATV franchise can only be accomplished by a new solicitation of bids

---

11. In further support we might add that recent FCC regulations now require that cable systems install the capacity for return communications on at least a non-voice basis. This ought to forestall any further objections by appellees that two-way capacity is a necessary prerequisite which a CATV system must meet before it can be considered a "communications" system. See 37 Fed.Reg. 3270 (Feb. 12, 1972).

**28**

on terms in compliance with present FCC standards.

Reversed and remanded with directions to enter judgment consistent with this opinion.