**UNION NATIONAL BANK OF LITTLE ROCK, Appellant,**

v.

**FARMERS BANK, HAMBURG, ARKANSAS, Appellee.**

**No. 85–1778WA.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1986.

Decided March 26, 1986.

William David Duke, Little Rock, Ark., for appellant.

William E. Johnson, Hamburg, Ark., for appellee.

Before McMILLIAN, JOHN R. GIBSON, Circuit Judges, and MURPHY,* District Judge.

* The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by designation.

DIANA E. MURPHY, District Judge.

This case involves a transaction between two banks related to participation in a note. Union National Bank of Little Rock (Union) appeals from the judgment entered after a trial to the court which denied recovery on Union's fraud and security claims. Union contends that the trial court[1] erred in finding that the ex-president of Farmers Bank (Farmers), William Woods, did not knowingly make misrepresentations related to a participation that Farmers sold to Union. It charges that the court also erred by refusing to apply the doctrine of constructive fraud and in concluding that Farmers had no affirmative duty to disclose material information about the participation. Union also cites as error the finding that the participation was not a security within the meaning of federal or Arkansas security laws. We affirm.

## I. BACKGROUND

Farmers, a small-town bank with about 20 employees, and W.E. Tucker Oil (Tucker Oil) originally entered into a $70,000 unsecured note. Farmers then sold a 100% participation in the note to Union on January 13, 1983. Union is a large bank in Little Rock which has about 300–400 employees and a separate correspondent department. This correspondent department buys and sells participation with "downstream" banks, and it was anxious to solicit new business.

Farmers was interested in selling Union the $70,000 participation for several reasons. First, an examination by the Arkansas State Bank Department found that Farmers had loaned Tucker Oil more than the $225,000 loan limit, a condition known as being "overline". Farmers sought to cure the "overline" problem by selling the $70,000 participation. Second, Farmers was interested in moving its primary "upstream" relationship from Worthen Bank in Little Rock to Union.

As a result of an examination by the Arkansas State Bank Department, the directors of Farmers decided to hire Woods to become Farmer's President. He joined Farmers on January 3, 1983 and determined to resolve the overline problems with Tucker Oil and several other accounts. Woods then met with two of Union's officers, Bob Knapp and Bob Jackson, on January 10, 1983 at Union's office in Little Rock. Jackson had previously met with Woods, shortly before he moved to Farmers, when he was at a bank in Wilmot, Arkansas. At that earlier meeting, Woods told Jackson of his anticipated move, and Jackson intimated to Woods that Union wanted to become Farmers' "upstream" bank.

At the January 10, 1983 meeting, Woods gave Knapp and Jackson the most recent financial statement available on Tucker Oil, a statement dated June 30, 1982. He also furnished an unaudited financial statement of E.A. and Linda Tucker dated October 31, 1982. After reviewing these statements, as well as a Dun & Bradstreet report on Tucker Oil, dated January 10, 1983, the Union officials decided to purchase the 100% participation in the note. These documents indicated that Tucker Oil was in sound shape.

Approximately two months after the sale of the participation, Tucker Oil's financial situation appeared more bleak. Farmers received a financial statement on Tucker dated December 31, 1982 which caused the Federal Deposit Insurance corporation (FDIC) to classify adversely all of the loans Farmers made to Tucker Oil. The statement showed a serious erosion of Tucker Oil's financial strength.

The obligation evidenced by the note and participation matured six months after its execution, but was not paid by Tucker Oil. Tucker Oil subsequently filed a voluntary petition of bankruptcy. Union then demanded that Farmers repurchase the note and filed suit when Farmers refused.

---

1. The Honorable Oren Harris, United States Senior District Judge for the Western District of Arkansas.

In its original complaint, Union alleged that Farmers violated federal and state securities laws, but the district court found on summary judgment that the participation was not a security under federal or state law. Union was then permitted to file an amended complaint to include common-law fraud. The amended complaint alleged that special circumstances existed between the parties because, among other things, the transaction was between bankers and E.A. Tucker, the President of Tucker Oil, was a director of Farmers. Tucker's accountant, Jim Sanderlin, was also a director of Farmers, until his resignation on May 10, 1983.

The trial court held that it had pendent jurisdiction and decided the merits of the fraud claims after trial.[2] It found that Woods represented that Tucker Oil was in sound financial condition when the participation was sold even though Tucker Oil was in some degree of financial difficulty at that time. The trial court found, however, that Woods had not been with Farmers long enough to know Tucker Oil's true financial condition and that Woods did not know or believe his representation to be false. The trial court further found that no special circumstances existed to impose an affirmative duty of disclosure on Farmers.

## II.  DISCUSSION

### A.  Security Claims

The first issue is whether Union's participation is a security within the meaning of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk (1982) (the Act).[3] The wide-ranging definition of a security found in the Act[4] is limited by congressional intent not to provide a broad federal remedy for all fraud and by the Supreme Court's practical approach to interpreting the federal securities laws. *United Housing Foundation v. Forman,* 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975). The Court emphasizes "the economic realities underlying a transaction" and does not focus on "the name appended thereto." *Id.* at 849, 95 S.Ct. at 2059.

For a participation to be considered a security under the Act, it must satisfy the elements of a test developed in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1494–1495 (8th Cir.1984). The *Howey* test defines a security as 1) an investment 2) in a common venture 3) with a reasonable expectation of profits 4) to be derived from the entrepreneurial or managerial efforts of others. 328 U.S. at 301, 66 S.Ct. at 1104.

Applying this standard, we conclude that Union's loan participation is not a security under federal law since it fails to satisfy three of the four *Howey* criteria. As in *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490 (8th Cir.1984), the circumstances of the transaction reveal nothing more than an ordinary commercial loan which turned sour. Union's efforts to distinguish *Kansas State Bank* are unpersuasive. The participation at issue was payable at a fixed interest rate, and the

---

**2.** The district court had the power to entertain the pendent state claims and properly exercised its discretion in doing so. *See Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *State of North Dakota v. Merchants National Bank & Trust Co.,* 634 F.2d 368 (8th Cir.1980); *Springfield Television, Inc. v. City of Springfield,* 462 F.2d 21 (8th Cir.1972).

**3.** Union's Notice of Appeal, indicating that Union was appealing from the final judgment of the trial court, is sufficient to raise for review the interlocutory partial summary judgment order entered April 4, 1985. *See Baldwin v. Redwood City,* 540 F.2d 1360, 1364 (9th Cir.1976), *cert. denied,* 431 U.S. 913, 97 S.Ct. 2173, 53

L.Ed.2d 223 (1977); *Blitzstein v. Ford Motor Co.,* 288 F.2d 738 (5th Cir.1961). Thus, the securities issue is properly before us.

**4.** Section 3(a)(10) defines a security as follows:
(a) when used in this chapter, unless the context otherwise requires—
\* \* \* \* \* \*
(10) the term "security" means any *note,* stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement \* \* \* or, in general, any instrument commonly known as a "security"; *or any certificate of interest or participation in* \* \* \* *any of the foregoing* \* \* \*
15 U.S.C. § 78c(a)(10) (emphasis added).

loan was a short-term one used for operating funds. Thus, the participation cannot be found to be an investment within the meaning of the *Howey* test. *See Kansas State Bank v. Citizens Bank,* 737 F.2d 1490 (8th Cir.1984). Moreover, Union had no prospect of capital appreciation or profit from any increased earnings in the business. Finally, the requirement that profits "be derived from the entrepreneurial or managerial efforts of others" is not satisfied. Union's return was based solely upon Tucker Oil's ability to repay the loan since Farmers' role was primarily administrative.

In light of the foregoing, we conclude that Union's participation interest was not a security within the meaning of the Act. It has thus failed to state a claim under section 10(b) of the Act, 15 U.S.C. § 78j(b), and the district court correctly dismissed this cause of action.

The second issue is whether Union's participation interest is a security within the meaning of Arkansas securities law. With only one relevant difference,[5] the Arkansas definition of a security is identical to that contained in the Act. *See Ark.Stat.Ann.* § 67–1247(*l*). Despite this similarity, Union contends that the trial court erred in concluding that the participation was not a security under Arkansas law. It alleges that the Arkansas Supreme Court expressly declined to follow the *Howey* test in *Schultz & Watkins v. Rector-Phillips-Morse, Inc.,* 261 Ark. 769, 552 S.W.2d 4 (Ark.1977), but instead adopted a more liberal case-by-case approach.

The Arkansas Supreme Court stated in *Schultz & Watkins,* that the Arkansas statute was "designed to protect both investors in common stock and those persons who in substance are the investors in the disguised business schemes of another." *Id.,* 552 S.W.2d at 8. Union was not an investor in a disguised business venture; rather, it was engaged in a routine banking transaction. In *Schultz & Watkins,* the Arkansas court focused on speculative schemes where venture capital is solicited from the public. It gave no indication in that decision that a standard commercial banking transaction would be covered by the state securities law.

Subsequently, the definition of a security was further refined in *Smith v. State,* 266 Ark. 556, 587 S.W.2d 50 (Ct.App. 1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980). The district court considered the *Smith* test for determining a security under Arkansas law. *Smith* identified five significant characteristics of traditional securities: 1) investment of money or money's worth; 2) investment in a venture; 3) expectation of some benefit to the investor as a result of the investment; 4) contribution towards the risk capital of the venture; and 5) the absence of direct control over the investment or policy decisions concerning the venture. 587 S.W.2d at 52. The trial court found these factors "substantially similar" to those in *Howey* and that the participation was not a security under Arkansas law. Substantial deference is due the district court's interpretation of the law of the state in which it sits, *e.g., Kansas State Bank v. Citizens Bank,* 737 F.2d 1490 (8th Cir.1984), and we find no error of fact or law in its decision that the participation is not a security under Arkansas law.

## B. Fraud Claims

Union next contends that the trial court erred in finding that Woods did not know or believe that his representations about Tucker Oil were false. Under Arkansas law, Union would have to demonstrate the following elements to prove common law fraud: 1) a false representation made by the defendant; 2) knowledge or belief on the part of the defendant that the representation is false or that he has not a sufficient basis of information to make it; 3) an

---

5. Arkansas law defines a security to include "evidence of indebtedness." This phrase does not appear in the Securities Exchange Act, but it was included in the definition of security used in the Securities Act of 1933. *See* 15 U.S.C. § 77b(1) (1982). Despite this difference, the definitions in the two federal acts have been held to be virtually identical. *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation; 4) justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it, and; 5) damage to the plaintiff, resulting from such reliance. *See, e.g., MFA Mutual Insurance Co. v. Keller,* 274 Ark. 281, 623 S.W.2d 841, 842–43 (1981).

■ If the district court's account of the evidence is plausible in light of the entire record, it must be upheld. *Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). When a finding is based upon the trial court's decision to credit the testimony of one of two or more witnesses, that finding, if not internally inconsistent, can virtually never be clear error. *Id.,* 105 S.Ct. at 1513.

■ Substantial evidence in the record supports the trial court's finding that Woods did not make a representation he knew or believed to be false. The record shows that Woods had only been at Farmers for four working days when he met with the Union officials. He testified that based upon a conversation he had with the bank examiner who had just completed an examination, as well as the most recent financial statements and audits of Tucker Oil, he had no reason to believe there were problems with Tucker Oil. The credibility of Woods' testimony was for the trier of fact, and his testimony was corroborated by the testimony of four of Farmers' directors. They each testified that as of January 1983, they were unaware that Tucker Oil was having financial difficulties and that it had always had a solid reputation in the community. Finally, one of Union's witnesses testified that the statements Woods made about Tucker Oil's con-

dition reflected Woods' knowledge at the time.

■ Union also argues that the trial court erred in refusing to apply the doctrine of legal or constructive fraud.[6] With this doctrine, Union seeks to make Farmers responsible for the consequences of Woods' statements even if Woods did not know they were false but made them with insufficient information.

It appears that Arkansas recognizes constructive fraud in certain situations. In *Miskimins v. City National Bank,* 248 Ark. 1194, 456 S.W.2d 673, 679 (1970), the Arkansas Supreme Court stated that constructive fraud arises from "a breach of a legal or equitable duty, which the law declares to be fraudulent because of its tendency to deceive others, regardless of the moral guilt, purpose or intent of the fraud feasor" (citations omitted). Constructive fraud may be "presumed from the relation of the parties to a transaction or from the circumstances under which it takes place." *Bain v. Deal,* 251 Ark. 905, 475 S.W.2d 708, 713 (Ark.1972) (quoting *Kersh Lake Drainage District v. Johnson,* 203 Ark. 315, 157 S.W.2d 39, 45 (1941), *cert. denied,* 316 U.S. 673, 62 S.Ct. 1044, 86 L.Ed. 1748 (1942)).

Farmers urges that this language demonstrates that constructive fraud applies only in certain limited situations as an exception to the general rule. It argues that there are no special circumstances which would make the doctrine applicable to this arms-length transaction between two banks. We agree. Nothing in the record indicates that Woods was in a position to assert undue influence over Union's officers. These officers were involved with

6. Farmers contends that the issue of constructive fraud was not before the trial court since Union's amended complaint only alleged affirmative fraud. The complaint did not mention "constructive fraud," but it did describe the relations of the parties, the events which occurred, and the contents of the alleged misrepresentations. It also alleged special circumstances. The complaint apprises Farmers of the activities which are claimed to be fraudulent, thus satisfying Fed.R.Civ.P. 8 and 9. *See also Cadillac v.*

*Cadillac,* 58 F.R.D. 534 (E.D.N.Y.1973) (the degree of particularization required for a complaint alleging active fraud may be totally inappropriate in an action involving constructive fraud). Moreover, Union's post-trial brief devoted five pages to the issue of legal or constructive fraud. The trial court's opinion specifically stated that it considered this brief before it ruled. Thus, the issue of legal or constructive fraud was raised before the trial court and may properly be considered on appeal.

Union's correspondence department, a department which specifically and routinely handles the buying and selling of participations. Nor does the evidence show that any legal or equitable duties existed between the parties.

Moreover, justifiable reliance is a necessary element to prevail under a theory of constructive fraud. *See Bridges v. United Savings Association,* 246 Ark. 221, 438 S.W.2d 303 (Ark.1969). The Union officers who dealt with Woods are knowledgeable businessmen who were aware he was new to Farmers and could not be thoroughly acquainted with all the details of the Tucker Oil note. Nevertheless, Union's officers made no attempt to examine information which was easily accessible to them. Union did not request financial statements from Tucker Oil from previous years, nor did it request any loan payment history from Farmers or from any other bank with outstanding loans to Tucker Oil. Union did present testimony at trial that its reliance on another banker was reasonable, but other testimony was to the contrary. Guy Humphries, a banking expert with 34 years experience, stated that reasonable banking practice requires that an upstream bank purchasing an overline participation should obtain financial statements, investigate the values shown on the statements, and make inquiry of the borrower itself. Upon this record, Union's reliance on Woods' statements was not justifiable. We conclude that the doctrine of constructive fraud is inapplicable to this case and that the district court did not err in failing to explicitly mention the doctrine or in finding that no fraud had been committed.

■ Union's final contention is that the district court erred in finding that Farmers had no affirmative duty to disclose material information about the participation. Under Arkansas law, a party may have an obligation to speak rather than remain silent, when a failure to speak is the equivalent of fraudulent concealment. *See, e.g., Berkeley Pump Co. v. Reed-Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128 (1983). Such a duty of disclosure arises only where special circumstances exist. *Id.,* 653 S.W.2d at 134. The duty arises "where one person is in position to have and to exercise influence over another who reposes confidence in him whether a fiduciary relationship in the strict sense of the term exists between them or not." *Hanson Motor Co. v. Young,* 223 Ark. 191, 265 S.W.2d 501 (1954). Absent such special circumstance, or affirmative fraud, a party must seek out the information it desires; it may not omit inquiry and examination and then complain that the other did not volunteer information. *Berkeley Pump v. Reed-Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128, 134 (1983).

Union claims that the district court's finding that no special circumstances existed in the instant case is clearly erroneous. As already discussed, substantial evidence exists to support this finding.[7] The record shows that commercial bankers on both sides entered into an arms-length transaction and that Union did not seek out available information regarding the note. The district court's finding is not clearly erroneous.

After carefully considering all of the arguments on appeal, we find no error. The judgment of the district court is therefore affirmed.

---

7. To show special circumstances, Union relies heavily on the fact that E.A. Tucker was a director of Farmers. The knowledge about Tucker Oil's financial trouble may not be imputed to Woods or to the bank, however. Where it is in a director's interest to conceal his or her knowl-edge, or where the director is acting outside the scope of his or her official duties, the director's knowledge will not be imputed to the bank. *City National Bank v. Vanderboom,* 422 F.2d 221 (8th Cir.), *cert. denied,* 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970).