**52**

ARTHUR YOUNG & CO., Appellant,

v.

Bob REVES; Robert H. Gibbs; & Frances Graham, Appellees.

Thomas E. ROBERTSON, Jr., As Trustee of the Farmer's Co–Op of Arkansas and Oklahoma, Inc., and as representative of a class of members, depositors, and equity security holders, who are similarly situated to him; Bob Reves; Frances Graham; Robert H. Gibbs, individually; Robert H. Gibbs, as natural guardian of his minor children, Thomas A. Gibbs and Robert H. Gibbs, Jr.; and Robert H. Gibbs, as Trustee of the Muskogee Internal Medicine Group Profit Sharing Funds, Appellants,

v.

ARTHUR YOUNG & CO., Appellee.

Thomas E. ROBERTSON, Jr., etc., et al.

v.

Jack WHITE, et al.

Robert R. CLOAR, Class Counsel, Appellant,

v.

Bob REVES, Appellee.

Thomas E. ROBERTSON, Jr., As Trustee of the Farmer's Co–Op of Arkansas and Oklahoma, Inc., and as representatives of a class of members, depositors, and equity security holders, who are similarly situated to him, Appellees,

v.

ARTHUR YOUNG & CO., Appellant.

Thomas E. ROBERTSON, Jr., etc., et al.

v.

Jack WHITE, et al.

Thomas E. ROBERTSON, Jr., As Trustee of the Farmer's Co–Op of Arkansas and Oklahoma, Inc., and as representative of a class of members, depositors, and equity security holders, who are similarly situated to him; Bob Reves; Frances Graham; Robert H. Gibbs, individually; Robert H. Gibbs, as natural guardian of his minor children, Thomas A. Gibbs and Robert H. Gibbs, Jr.; and Robert H. Gibbs, as Trustee of the

Muskogee Internal Medicine Group Profit Sharing Funds, Appellees,

v.

ARTHUR YOUNG & CO., Appellant.

Nos. 87–1726, 87–1727, 88–1014, 87–1803 and 87–2533.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1988.

Decided Sept. 2, 1988.

Opinion of Denial of Rehearing and Rehearing En Banc Dec. 2, 1988.

John Matson, New York City, for appellant.

Robert R. Cloar, Ft. Smith, Ark., for Reves et al.

Gary M. Elden, Chicago, Ill., for appellee.

Before FAGG and MAGILL, Circuit Judges, and SNEED,* Senior Circuit Judge.

* THE HONORABLE JOSEPH T. SNEED, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

MAGILL, Circuit Judge.

This case arose out of the bankruptcy of the Farmer's Cooperative of Arkansas and Oklahoma, Inc. (Co-op). A class comprised of the holders of demand notes (Class) issued by the Co-op obtained a $6.1 million judgment against the Co-op's independent auditors, Arthur Young & Co. (Arthur Young).[1] The judgment followed a jury verdict that Arthur Young violated section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (Federal Act) and section 67–1256 of the Arkansas Securities Act, Ark.Stat.Ann. § 67–1256 (Arkansas Act) (recodified at Ark.Code Ann. § 23–42–106 (1987)), in connection with the sale of demand notes by the Co-op.

Arthur Young appeals the district court's (1) denial of its motion for a new trial or judgment n.o.v.; (2) award of costs to the Trustee and the Class; (3) award of attorney's fees to Class counsel; (4) calculation of pre- and post-judgment interest; and (5) denial of its petition for costs against the Trustee and the Class.

The Class cross-appeals, claiming that the district court erred in crediting settlement proceeds against the jury verdict against Arthur Young, and in granting summary judgment in favor of Arthur Young on the Class' claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

The Trustee cross-appeals the dismissal of his breach of contract claim.

Because we believe that the demand notes at issue are not "securities" for purposes of either the federal or Arkansas security acts, we reverse the denial of Arthur Young's motion for j.n.o.v. Furthermore, we deny the Class' and Trustee's cross-appeals.

## I. BACKGROUND

In light of our disposition, only a brief recitation of the facts is necessary. Prior to retaining the services of Arthur Young in 1981, the Co-op had, for the most part, operated a traditional farmer's cooperative in northwest Arkansas and northeast Oklahoma. One of its financing methods, however, was not traditional, and it provides the focus for this lawsuit.

The Co-op was a membership organization for the farmers it served; it charged only a nominal membership fee. The Co-op obtained some of its operating funds not from traditional borrowing sources such as banks, but rather from the sale of promissory notes (demand notes) to its members. The practice involved the payment of money to the Co-op by a member in exchange for a promissory note payable on demand, at a rate of interest higher than could be obtained from area banks or savings and loans. The rate of interest changed periodically, based on market conditions, and those changes were announced in the Co-op's newsletter. The sale of the demand notes was an ongoing activity, and no financial information regarding the Co-op was disclosed to the members at the time of sale except for a statement of the Co-op's total assets, which was released by the Co-op periodically. All members of the Class held demand notes.

Arthur Young was engaged by the Co-op to audit and report on its 1981 and 1982 financial statements. Neither the Co-op's management nor its board of directors disseminated the audited financial statements to either the Co-op's members or its demand noteholders. The only dissemination of financial information by the Co-op occured at its annual meetings. Its management created condensed financial statements, and these were distributed to the approximately 350 members, a small fraction of the total Co-op membership, who attended the meetings.

At both the 1982 and 1983 meetings, Arthur Young representatives spoke briefly. They informed the members that the full audited financial statements, together with Arthur Young's report on them, were available at the Co-op's office. They also made a presentation of approximately ten minutes describing the general financial status of the Co-op.

The Class argued that Arthur Young deliberately failed to follow generally accepted accounting principles and, specifically, intentionally failed to follow Accounting Principles Board Opinion 16 with respect to its valuation of one of the Co-op's major assets, a gasohol plant. The Class maintained that had Arthur Young properly treated the gasohol plant, the Co-op's insolvency would have been readily apparent. The Class contended that Arthur Young avoided the correct accounting treatment and lied about its reasons for so doing, in order to inflate the assets and net worth of the Co-op. The Class asserted that Arthur

---

**1.** Although at one point this action involved more than a dozen claims by the bankruptcy trustee (Trustee) and the Class against approximately forty defendants, this appeal involves only the claims against Arthur Young.

Young "originated" fraudulent statements and omissions, and that the demand notes were purchased in reliance upon these statements and omissions.

Prior to trial, the district court granted summary judgment to Arthur Young on the Class' RICO claim and dismissed the Trustee's breach of contract claim. The jury found in favor of Arthur Young on the Trustee's fraud and negligence claims and in favor of the Class on the securities claims. This appeal and cross-appeal followed.

## II. DISCUSSION

### A. Arthur Young's Appeal

■ The first issue is whether the demand notes are securities within the meaning of the Federal Act. While the Federal Act defines a security as "any note," 15 U.S.C. § 78c(a)(10), it is nevertheless well settled that these definitional sections are not to be read literally because "Congress intended the application of [the federal securities acts] to turn on the economic realities underlying a transaction and not on the name appended thereto," *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975), and an instrument which seems to fall within the broad sweep of the federal acts is not to be considered a security "if the context otherwise requires." *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982); *see Smith International, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1199 n. 4 (5th Cir.1988); *cf., Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985).[2] Thus, "the wide-ranging definition of a security found in the [Federal] Act is limited by congressional intent not to provide a broad federal remedy for all fraud and by the Supreme Court's practical approach to interpreting the federal securities laws." *Union National Bank of Little Rock v. Farmers Bank*, 786 F.2d 881, 884 (8th Cir.1986) (footnote omitted).

■ For the demand notes at issue to be considered securities under the Federal Act, they must satisfy the elements of the test developed in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *see Farmers Bank*, 786 F.2d at 884; *Kansas State Bank v. Citizens Bank*, 737 F.2d 1490, 1494–95 (8th Cir.1984). Even if the Supreme Court should determine it inappropriate to apply the *Howey* test to an instrument which bears both the name "note" and the usual characteristics of a security, *see supra* n. 2, it is no bar in this case because the instrument at issue, while possessing the name, lacks the characteristics.

The demand nature of the notes is very uncharacteristic of a security. "A demand or short-term note is almost *ipso facto* not a security unless payment is dependent upon the success of a risky enterprise or the parties contemplate indefinite extension of the note or perhaps conversion to stock." *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252, 1257–58 (9th Cir.1976); *see Kansas State Bank*, 737 F.2d at 1494. Neither of the conditions is present here. Because the demand notes are uncharacteristic of a security, we look to the economic reality of the transaction to determine their status. *See Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

The *Howey* test defines a security as (1) an investment; (2) in a common enterprise; (3) with a reasonable expectation of profits; (4) to be derived from the entrepreneurial or managerial efforts of others. *Id.* at 301, 66 S.Ct. at 1104.

Applying this standard, we conclude that the demand notes are not securities under federal law. First, these notes were short-term loans with fixed interest rates which were used for operating funds. *See Farmers Bank*, 786 F.2d at 884–85. The Co-op initiated this program because it could obtain funds at rates lower than those offered by banks; the members "deposited" their money with the Co-op in order to earn a higher return than could be obtained from a bank. Thus, under the first element of the *Howey* test, this transaction was much more akin to a commercial lending arrangement than an investment transaction. *See Farmers Bank*, 786 F.2d at 884–85. Moreover, the third element of the *Howey* test, *i.e.*, a reasonable expectation of profit, is lacking in this case.

Profit, however, does not mean any return beyond principal. Rather, it is prof-

---

**2.** The Supreme Court has held that when an instrument bears both the name and all the usual characteristics of "stock," it is not necessary to determine whether application of the federal securities acts is mandated by the economic substance of the transaction. *Landreth*, 471 U.S. at 693–94, 105 S.Ct. at 2305–06.

The Court has specifically declined to determine whether the same is true of "'notes' or 'bonds' or some other category of instrument listed in the [Federal Act's definition of security]." *Id.* at 694, 105 S.Ct. at 2306.

it of the type typically associated with an investment. This includes 'capital appreciation resulting from the development of the initial investment * * * or a participation in earnings resulting from the use of investors' funds * * *.

*Kansas State Bank*, 737 F.2d at 1495, *quoting Forman*, 421 U.S. at 852, 95 S.Ct. at 2060. Here, the interest rate was fixed by an established market rate. The demand noteholders did not participate in the Co-op's earnings by virtue of their ownership of the demand notes, nor was there any prospect of capital appreciation. Therefore, the demand noteholders did not expect a "profit" as that term is defined in *Howey*.

Because these demand notes were uncharacteristic of securities, and also failed the *Howey* test, we conclude that they were not securities within the meaning of the Federal Act. The Class has thus failed to state a claim under section 10(b) of the Federal Act, 15 U.S.C. § 78j(b).

The second issue is whether the demand notes are securities within the meaning of the Arkansas Act. In *Smith v. State*, 266 Ark. 861, 587 S.W.2d 50, 52 (App.1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980), the Arkansas Court of Appeals identified five significant common characteristics of a security: (1) the investment of money or money's worth; (2) investment in a venture; (3) the expectation of some benefit to the investor as a result of the investment; (4) contribution towards risk capital of the venture; and (5) the absence of direct control over the investment or policy decisions concerning the venture. Judge Harris, a senior district judge for the Western District of Arkansas, recently held that "[t]he Arkansas definition of a security is essentially identical to the definition under the federal securities laws and ʻthe criteria followed [in *Smith* and *Howey*] in making a determination on whether an instrument is a security is also the same." *First Financial Federal Savings & Loan Assn. v. E.F. Hutton Mortgage Corp.*, 652 F.Supp. 471, 475 (W.D.Ark.), *aff'd*, 834 F.2d 685 (8th Cir. 1987).[3] *See Farmers Bank*, 786 F.2d at 885. It follows, therefore, that the Class is not entitled to relief under the Arkansas Act. Accordingly, the district court's denial of Arthur Young's motion for j.n.o.v. is reversed.

**3.** While this court affirmed the district court in *First Financial*, it found it unnecessary to resolve the question whether the *Howey* and *Smith* tests are substantially the same. *First*

This disposition requires us to vacate the district court's award of fees and costs in favor of the Class and Trustee and against Arthur Young. Moreover, the case is remanded, and the district court is directed to award reasonable costs to Arthur Young and against the Class and the Trustee. *See* Fed.R.Civ.P. 54(d).

**B. The Class' Cross–Appeal**

In view of our decision with respect to the securities claims, it is unnecessary to discuss the Class' contentions regarding the district court's order requiring the crediting of settlement proceeds.

The Class next challenges the district court's entry of summary judgment in favor of Arthur Young on the Class' RICO claim. It is not necessary to review the district court's decision on this issue because our disposition of the securities claims means that no predicate acts exist which could form the basis for RICO liability. *See* 18 U.S.C. § 1961(5); *Sedima, S.P. R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 485, 105 S.Ct. 3275, 3279, 87 L.Ed.2d 346 (1985). This is true despite the fact that the complaint in this case also alleged mail and wire violations, because the Class did not pursue these claims below or on this appeal.

**C. The Trustee's Cross–Appeal**

The Trustee contends that the district court erred in dismissing his breach of contract claim against Arthur Young. Finding no error of fact or law, we affirm this portion of the district court's decision.

**III. CONCLUSION**

The judgment of the district court denying Arthur Young's motion for j.n.o.v. on the securities claims is reversed. The award of costs and fees to the Class and the Trustee is vacated, and the case is remanded for a determination as to the appropriate amount of costs to be awarded to Arthur Young.

As to the cross-appeals, we affirm the denial of the RICO claim, based on the absence of the required predicate acts, and we affirm the dismissal of the Trustee's contract claim.

**On Rehearing**

ARNOLD, Circuit Judge, with whom LAY, Chief Judge, HEANEY and JOHN R. GIBSON, Circuit Judges, join, dissenting.

*Financial,* 834 F.2d at 688. We now decide, agreeing with Judge Harris, that the tests are essentially the same.

I vote to grant the petition for rehearing en banc.

It seems to me that the notes involved in this case meet all the traditional tests of a security. The statute, of course, expressly includes "notes" in its definition, so one begins at least with a presumption that notes are covered. It remains true that some notes are not "notes" as the statute uses the term—for example, a note I sign to evidence a loan from a friend or a bank. But the notes at issue here are poles apart from such a case of personal or commercial credit. They were sold to large numbers of relatively unsophisticated investors; their purpose is to raise capital which will be put at risk in the insurer's business; and those who buy them expect to reap a benefit in the form of interest payments. So even if these notes have to meet the traditional test for "investment contracts," they clearly qualify. Our panel's conclusion to the contrary appears to commit the Eighth Circuit to a definition of security unique among the federal courts.

The panel's almost casual rejection of the District Court's view of Arkansas law also disturbs me. We normally defer to district judges' interpretations of the law of their own states. My own attitude when hearing appeals on such questions is roughly akin to the posture of appellate judges when reviewing questions of fact. That is, I am inclined to reverse on state-law questions only when the decision below is clearly erroneous. Such a use of a question-of-fact standard is not so strange as it may first appear. Questions of foreign law are traditionally treated as questions of fact. And, while the law of a state is obviously not "foreign" to us in the same way as, say, the law of Afghanistan, a judge of a federal appellate court whose legal upbringing was in Arkansas cannot be expected to have the same instinctive feel for the law of North Dakota as a judge of that State. One can look at all the law books in print and still not have the same degree of reliable judgment on legal questions as a lawyer who has lived and practiced for years in the jurisdiction. There is such a thing as what Dean Pound called "law in action," as opposed to "law in the books." Each State has its own distinct legal ethos which informs and qualifies how lawyers and judges understand what is written in the law books. So when we defer to the opinions of district courts on the law of their states, we are not shirking our responsibilities. We are simply using common sense.

Here, the District Court's opinion on the meaning of the Arkansas securities statute seems to me more carefully analyzed than the opinion of our panel. But even if it did not, I would still be inclined to affirm. There is no reported Arkansas state-court opinion that contradicts the District Court's view, nor is there anything logically deficient about its analysis. The regulatory attitude of the Arkansas Securities Department, and the history of the Arkansas General Assembly's treatment of the exemption for notes issued by agricultural cooperatives point strongly in the same direction. See *Robertson v. White*, 635 F.Supp. 851, 856–58 (W.D.Ark.1986) (the opinion of Chief Judge Waters in this case).

One other observation about the panel's holding on Arkansas law: it binds no one except the parties to this case (by *res judicata*) and the federal courts in this Circuit (by *stare decisis*). It does not the Arkansas state courts or the Arkansas Securities Department. Our decisions on state law can be accepted by the state courts if they find them persuasive, but they need not be. *Stare decisis*, as a doctrine of binding precedent, applies only to courts at the same or a lower level in a single hierarchical system. We have no supervisory or appellate jurisdiction over the state courts. So when this question comes before the Arkansas state courts (if it does), they are free to differ from our panel's conclusion. I hope that they will differ. And if the Arkansas Supreme Court decides the question differently from our panel, this Court will thereafter be bound by that decision. The Supreme Court of Arkansas has the last word on the law of Arkansas.