927 F.2d 1039
 32 ERC 1929, 21 Envtl. L. Rep. 20,913
 C.C. GRISHAM, Individually and as next friend of Hallie C.
Ormond; Hallie Ormond; Mass Merchandisers, Inc.;
McKesson Corporation, Appellants,
v.
COMMERCIAL UNION INSURANCE COMPANY; St. Paul Fire and
Marine Insurance Company; Aetna Casualty and Surety
Company; City Insurance Company; Columbia Casualty
Company; Home Indemnity Company; Transamerica Insurance
Company, Appellees.
 No. 89-1481.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1990.
Decided March 8, 1991.
 
 Stephen G. Weil, Washington, D.C., for appellants.
 Roger E. Warin, Washington, D.C., for appellees.
 Before ARNOLD and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 These are consolidated appeals from summary judgments entered by the district court[1] in favor of appellee insurers. We affirm.
 
 
 2
 Hallie C. Ormond, C.C. Grisham, Mass Merchandisers, Inc., and McKesson Corporation (collectively "Appellants") have sought coverage from the appellee insurers for various environmental claims arising from the ownership and operation of a wood treatment facility located near Omaha, Boone County, Arkansas (the "Arkwood Site").
 
 
 3
 The Arkwood Site consists of approximately twenty acres of land. From approximately 1964 or 1965 until January 1, 1985, when the wood treatment facility was closed,[2] fence posts and other lumber products were treated at the Arkwood Site with creosote, pentachlorophenol (penta), and other chemical preservatives.
 
 
 4
 During the twenty-plus years of treatment operations at the Arkwood Site, excess treatment fluid containing creosote, penta, and other chemicals were generated in the normal course of business operations. It was a standard operating procedure for many years to wash down the treatment cylinders and then pump the waste onto the ground and to spread it around the plant area for weed and dust control.
 
 
 5
 After an investigation into alleged environmental contamination at the Arkwood Site, the Arkansas Department of Pollution Control and Ecology filed a complaint against Ormond and Mass Merchandisers, Inc. in September of 1986, seeking a permanent injunction against the owners and operators of the Arkwood Site to cease and abate the pollution of Arkansas waters and to remove or contain wastes at the Arkwood Site that were likely to cause such pollution.
 
 
 6
 In April of 1987, the United States Environmental Protection (EPA) filed an action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. Secs. 9601, et seq., seeking access to the Arkwood Site for the purpose of conducting an investigation. The suit also sought an injunction under sections 104(e)(5) and 106(a) of CERCLA to enjoin any action that might interfere with the EPA's inspection. The EPA also issued an administrative order pursuant to section 106(a) of CERCLA directing the owners and operators of the Arkwood Site to undertake action to protect the public health and welfare and the environment from the endangerment presented by the actual or threatened release of hazardous substances from the Arkwood Site. The administrative order also directed the parties to undertake specific remedial actions with respect to the release or threat of release of hazardous substances from the Arkwood Site.
 
 
 7
 None of the above-described state and federal actions sought the payment of money to a government agency, or the payment of any kind of compensation.
 
 
 8
 During the periods of operation at the Arkwood Site, the several insurers[3] issued various insurance policies to Ormond, Grisham, Mass Merchandisers, Inc., and/or McKesson Corp. All of these policies included a provision in their insuring agreement to the effect that "[t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." These policies also provide that "the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage."
 
 
 9
 Appeal No. 89-1431 arises from a suit originally commenced in state court in Texas by Grisham in March of 1987. That action sought a declaration of entitlement to a defense and indemnification policy issued to Ormond by appellee Maryland Casualty Co. The suit was ultimately removed to federal court and then transferred to the Western District of Arkansas.
 
 
 10
 In appeal No. 89-1161, Maryland Casualty Co. filed a declaratory judgment action against Ormond in the Western District of Arkansas in June of 1987 seeking a declaration that the insurance coverage it had sold to Ormond did not cover monies expended by Ormond pursuant to the governmental actions described above.
 
 
 11
 On January 6, 1989, the district court entered summary judgment for Maryland Casualty Co. in the Ormond action, holding that "clean-up costs are not encompassed within the meaning of the word 'damages' in the standard form [comprehensive general liability] policies at issue." Memorandum Opinion at 12 (January 6, 1989). In reaching this conclusion, the district court found that because the provisions of Arkansas state law regarding the interpretation of insurance contracts are not substantially different from those of the state of Missouri, this court's opinion in Continental Ins. Co. v. Northeastern Pharmaceutical & Chemical Co., Inc. (NEPACCO ), 842 F.2d 977 (8th Cir.) (en banc), cert. denied, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988), required it to hold that the policies in question do not provide the insurance coverage sought by appellants. On February 8, 1989, the district court entered summary judgment in favor of the insurers in the Grisham action on the basis of its earlier ruling in Ormond.
 
 
 12
 Appellants have cited a number of cases that have disagreed with NEPACCO's interpretation of the word "damages." Those cases, however, while interesting, are irrelevant to our task in deciding this appeal, because it requires no citation of authority to say that a panel of this court cannot overrule an en banc decision. Accordingly, our review is limited to the question whether the district court erred in its interpretation of state law.
 
 
 13
 As our cases have repeatedly pointed out, we accord substantial deference to a district court's interpretation of the law of the state in which it sits. See, e.g., Norton v. St. Paul Fire & Marine Ins. Co., 902 F.2d 1355, 1357 (8th Cir.1990); St. Paul Fire & Marine Ins. Co. v. Rock-Tenn Co., 787 F.2d 340, 341 (8th Cir.1986). Our standard of review in such cases is narrowly circumscribed.
 
 
 14
 We have a limited role in reviewing questions of state law. In a diversity case in which the state's highest court has not expressly decided an issue, we defer to the local district court's interpretation on the question unless it is fundamentally deficient in analysis or otherwise lacking in reasoned authority.
 
 
 15
 Pershern v. Fiatallis North America, Inc., 834 F.2d 136, 138 (8th Cir.1987) (citations omitted). See also Perkins v. Spivey, 911 F.2d 22, 29 (8th Cir.1990), for an essentially similar formulation of our standard of review.
 
 
 16
 In according such substantial deference to the district courts and concomitantly self-restricting our standard of review, we do not suggest that the district courts are imbued with a spirit of judicial gnosticism when ruling on questions of state law. Rather, we recognize the unique familiarity a district court has with respect to the local law of the state in which it sits, as so well expressed by Judge Arnold in Arthur Young & Co. v. Reves, 856 F.2d 52, 56 (8th Cir.1988) (Arnold, J., dissenting from the denial of rehearing en banc) (subsequent history omitted).
 
 
 17
 Having reviewed the district court's careful, thorough memorandum opinion in the light of the above-described standard of review, we conclude that the district court's interpretation of Arkansas law is not wanting for reasoned analysis nor lacking in reasoned authority. To the contrary, the district court, while expressing its reservation about the correctness of our holding in NEPACCO (as of course was its right to do), nevertheless found that because the relevant provisions of Arkansas law are so substantially similar to those of Missouri, the same interpretation of "damages" should be given to the policies in question under Arkansas law as this court gave that term in NEPACCO. We have no reason to believe that the district court erred in reaching this conclusion.[4]
 
 
 18
 The judgments appealed from are affirmed.
 
 
 
 [1]
 The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas
 
 
 [2]
 The different entities that owned and operated the wood treatment plant over the years are clearly set forth in the district court's memorandum opinion, and we deem it unnecessary to repeat that description here
 
 
 [3]
 Commercial Union Insurance Company; St. Paul Fire and Marine Insurance Company; Aetna Casualty and Surety Company; City Insurance Company; Columbia Casualty Company; Home Indemnity Company; and Transamerica Insurance Company
 
 
 [4]
 We have considered, and find unpersuasive, appellants' contention that a March 1989 amendment to the Arkansas Remedial Action Trust Fund Act, Ark.Stat.Ann. Secs. 8-7-501 et seq., makes clear that the policies in question provide the coverage appellants seek