834 F.2d 685
 Blue Sky L. Rep. P 72,673
FIRST FINANCIAL FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,
v.
E.F. HUTTON MORTGAGE CORPORATION, Westcap Government
Securities, Inc., and E.F. Hutton & Co., Inc., Appellees.
 No. 87-1200.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1987.
Decided Nov. 20, 1987.
Rehearing Denied Dec. 23, 1987.
 
 Ian W. Vickery, El Dorado, Ark., for appellant.
 Howard Hawkins, New York City, for appellees.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Plaintiff First Financial Federal Savings & Loan Association (First Financial) appeals from the district court's[1] dismissal of its action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. First Financial brought this action against E.F. Hutton Mortgage Corporation (Hutton Mortgage), Westcap Government Securities, Inc. (Westcap), and E.F. Hutton & Co., Inc. (Hutton), in Arkansas state court, but the case was removed to federal court based upon diversity jurisdiction. First Financial asserts claims against Hutton Mortgage, Westcap, and Hutton based on common law fraud and violations of the Arkansas securities laws. We affirm the district court's dismissal of First Financial's lawsuit.[2]
 
 I. BACKGROUND
 
 2
 In June 1985 First Financial purchased from Hutton Mortgage more than 2.2 million dollars of mortgage loans in the secondary mortgage loan market. Westcap brokered the sale and Hutton, the parent corporation of Hutton Mortgage, was active in the sale as well. First Financial alleged that the defendants failed to disclose material facts and falsely misrepresented other material facts thus supporting an action for common law fraud. In addition, First Financial alleged that the nondisclosure of material facts supports a cause of action for violation of the Arkansas securities laws. First Financial argues that the district court erred in granting the defendant's Rule 12(b)(6) motion because the pleadings stated valid causes of action on these theories.
 
 II. DISCUSSION
 
 3
 Whether a complaint states a cause of action is a question of law which we review on appeal de novo. In judging the propriety of the dismissal * * * we are guided by the standard that a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. We must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.
 
 
 4
 Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986) (citations omitted). With this standard in mind, we nevertheless find that plaintiff has failed to state a cause of action upon which relief can be granted.
 
 A. Fraud Claim
 
 5
 First Financial's claim of common law fraud fails because it lacks the crucial element of justifiable reliance. The purchase agreement between First Financial and Hutton Mortgage provides that the mortgages were sold "as is" and that First Financial was not relying upon any representations made by anyone regarding the quality of the mortgages. The district court, applying New York law[3], held that the express provisions in the purchase agreement negated any claim of reasonable reliance. We agree with the district court's interpretation and application of New York law.
 
 
 6
 Under New York law, in order to establish a case of misrepresentation the plaintiff must allege the following elements:
 
 
 7
 (1) A false representation,
 
 
 8
 (2) knowledge or belief on the part of the person making it that the representation is false; or that there is an insufficient basis for making the statement,
 
 
 9
 (3) intention to induce plaintiff to act or rely upon the statement,
 
 
 10
 (4) justifiable reliance,
 
 
 11
 (5) damage.
 
 
 12
 See Pittsburgh Coke & Chemical Co. v. Bollo, 421 F.Supp. 908, 924 (E.D.N.Y.1976), aff'd, 560 F.2d 1089 (2d Cir.1977); see also 652 F.Supp. at 473.
 
 
 13
 In Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597, 598 (1959), the New York Court of Appeals was faced with the very question that is now before this court: "The basic problem presented is whether the plaintiff can possibly establish from the facts alleged in the complaint (together with the contract which was annexed to the complaint) reliance upon the misrepresentations." (Citation omitted). The Danann court recognized the distinction between a general merger clause and a specific disclaimer of reliance, noting that the general merger clause does not preclude a claim of fraud in the inducement, whereas a specific disclaimer of reliance does.
 
 
 14
 The purchase agreement between First Financial and Hutton Mortgage provided:
 
 
 15
 Purchaser understands that the mortgage loans have been purchased by Seller in the secondary market and that Seller is selling the mortgage loans "as is" and is making no representations and warranties with respect to the mortgage loans * * * *
 
 
 16
 Purchaser acknowledges that it is a sophisticated institution with substantial knowledge and experience in evaluating mortgage loans, appraisals, servicing and mortgage insurance. It is making an informed decision in connection with the purchase of the mortgage loans. It has been granted full access to all information and files and the opportunity to ask questions concerning the purchased loans. It has evaluated the quality of the purchased loans and the related insurance policies, understands and can bear the risks involved in this purchase * * * * It also acknowledges that no person has been authorized to give any information or make any representation regarding the mortgage loans, and if given or made, no such information or representation has been relied upon. This Agreement contains the entire agreement between the parties, and merges and extinguishes all prior arrangements or understandings.
 
 
 17
 The disclaimer bears a remarkable similarity to the disclaimer at issue in the Danann case. The Danann court stated:
 
 
 18
 [P]laintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded. Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations * * * *
 
 
 19
 Danann, 184 N.Y.S.2d at 602, 157 N.E.2d at 599. We believe the present case is indistinguishable from the Danann case and therefore reach the same result.
 
 
 20
 Moreover, First Financial cannot claim that it reasonably relied on any misrepresentations made by the defendants when it could have discovered the true nature of the mortgages by exercising ordinary diligence. As noted above, the mortgage purchase agreement stipulated that First Financial had been given full access to all information and files concerning the mortgages. Thus, First Financial had the means available of knowing the true nature of the mortgages and by failing to make use of those means First Financial cannot now complain that it was induced to enter the transaction by fraud. See Barcomb v. Alford, 125 A.D.2d 907, 510 N.Y.S.2d 267 (1986). Indeed, First Financial stipulated in the agreement that it was a sophisticated institution capable of evaluating the mortgages. "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." Grumman Allied Industries v. Rohr Industries, Inc., 748 F.2d 729, 737 (2d Cir.1984).
 
 
 21
 The specific disclaimer of reliance in the mortgage purchase agreement negates any claim of reasonable reliance found in First Financial's complaint. Therefore, First Financial has not stated a cause of action for fraud and the district court correctly dismissed count one of the complaint alleging fraudulent misrepresentation. First Financial has made what it now regards as a bad bargain and must bear the risks inherent in the transaction.
 
 B. Arkansas Securities Claim
 
 22
 First Financial next alleges that the defendant's failure to disclose material facts violated the antifraud provisions of the Arkansas Securities Act. Ark.Stat.Ann. Sec. 67-1235 et seq. (1980). The threshold and dispositive issue is thus whether the mortgages constitute "securities" within the meaning of the Arkansas Securities Act. "Security" is defined as follows:
 
 
 23
 "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; variable annuity contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security" or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing.
 
 
 24
 Ark.Stat.Ann. Sec. 67-1247(l )(1) (1985 Cum.Supp.).
 
 
 25
 First Financial argues that the terms "investor" and "investment" used in the purchase agreement indicate the parties intent that the transaction was not an ordinary commercial loan transaction. However, it is fundamental that this court must look beyond the labels used by the parties when determining whether a particular arrangement involves a "security" as that term was intended by the Arkansas legislature. Schultz v. Rector-Phillips-Morse, Inc., 261 Ark. 769, 552 S.W.2d 4, 11 (1977) ("It is not the label that determines whether these units are securities, but the economic substance of the financing of the venture.").
 
 
 26
 It is not clear from Arkansas case law whether the test used to determine if a transaction involves a security under Arkansas law is, in substance, the same test used under federal law. However, after concluding that the tests are essentially the same, the district court analyzed this transaction using the four part test set forth in S.E.C. v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). "The Howey test defines a security as (1) an investment (2) in a common venture (3) with a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others." Union Nat. Bank of Little Rock v. Farmers Bank, 786 F.2d 881, 884 (8th Cir.1986).
 
 
 27
 In Smith v. State, 266 Ark. 861, 587 S.W.2d 50, 52 (App.1979), cert. denied, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980), the Arkansas Court of Appeals identified five significant common characteristics of a security: "(1) the investment of money or money's worth; (2) investment in a venture; (3) the expectation of some benefit to the investor as a result of the investment; (4) contribution towards the risk capital of the venture; and (5) the absence of direct control over the investment or policy decisions concerning the venture."
 
 
 28
 It is not necessary for the purposes of this appeal to resolve the question whether these tests are in essence the same. Under either approach the mortgages purchased by First Financial lack the essential characteristics of a security, under the Arkansas Securities Act.
 
 
 29
 In the Arkansas Supreme Court's most recent pronouncement on this question the court stated, "the underlying economic substance of a security is an arrangement where the investor is a mere passive contributor of risk capital to a venture in which he has no direct or managerial control." Casali v. Schultz, 292 Ark. 602, 732 S.W.2d 836, 837 (1987).
 
 
 30
 It is clear from the record before the court that First Financial was not an investor as that term is used in a securities analysis. The record shows that First Financial purchased more than 2.2 million dollars worth of mortgages. The transaction was nothing more than an ordinary commercial transaction and not an investment. In addition, the 2.2 million dollars cannot be fairly characterized as "risk capital." Risk capital, in this context, refers to money or property invested in a business venture. Surely, First Financial cannot argue that the 2.2 million was an investment in Hutton Mortgage's business, nor can it be argued that First Financial expected to profit from Hutton Mortgage's business. This money is more accurately characterized as the purchase price of the mortgages and not as an investment in a business venture.
 
 
 31
 In addition, First Financial possesses the critical element of control that is lacking in a security. The owner of a security lacks the ability to control the venture in which he is investing. This concept of control, or lack of control, is the basis for the requirement that a security derives its value from the managerial or entrepreneurial efforts of others. In contrast to a security, First Financial had complete control over the mortgages that it purchased.
 
 
 32
 First Financial argues that because the mortgages were serviced by a third-party servicing company the requirement that a security derive its value from the efforts of others is met. This argument misses the point. The activities performed under the mortgage servicing agreement were merely administrative and ministerial in nature. These activities do not constitute the managerial or entrepreneurial efforts of others. Further, First Financial was able to terminate the mortgage servicing agreement and administer the mortgages itself, thus the servicing company was merely an agent of First Financial. First Financial's ability to take control over the administration of the mortgages demonstrates that it was not relying on the efforts of others to generate a return on the mortgages.
 
 
 33
 The purchase of mortgages serviced by a third-party is no different than the purchase of an apartment complex managed by a third-party. This court has held that a transaction involving the purchase of an apartment complex in conjunction with a servicing contract does not involve a security under the federal securities laws. See Schultz v. Dain Corp., 568 F.2d 612, 615 (8th Cir.1978); Fargo Partners v. Dain Corp., 540 F.2d 912, 915 (8th Cir.1976). A critical factor in the court's holding in these cases and the case at bar is that the purchaser has retained ultimate control over his purchase.
 
 
 34
 Finally, First Financial did not have an expectation of "benefit" or "profit" as those terms are used in the Smith v. State and Howie tests. First Financial had the right to payment of fixed amounts of principal, plus a fixed rate of interest, payable by the mortgagors at fixed times. First Financial did not have an opportunity for either capital appreciation or participation in the earnings of Hutton Mortgage or the individual mortgagors. This court has held that a fixed rate of return is not a profit as that term is used in the Howey test. Kansas State Bank v. Citizens Bank, 737 F.2d 1490, 1495 (8th Cir.1984). Similarly, we do not believe that a fixed rate of return is an "expectation of benefit to the investor" as contemplated by the Arkansas Court of Appeals in Smith v. State.
 
 III. CONCLUSION
 
 35
 We hold that First Financial's complaint fails to state a claim upon which relief can be granted. First Financial's claim of fraud fails to state a claim because the mortgage purchase agreement contains a specific disclaimer which negates any reasonable reliance by First Financial on any misrepresentations made by the defendants. In addition, First Financial's Arkansas Securities Act claim fails to state a cause of action because the mortgages purchased by First Financial do not constitute securities under Arkansas law. Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Oren Harris, United States Senior District Judge for the Western District of Arkansas
 
 
 [2]
 The opinion of the district court is found at First Fin. Fed. Sav. v. E.F. Hutton Mortg. Corp., 652 F.Supp. 471 (W.D.Ark.1987)
 
 
 [3]
 The Mortgage Purchase Agreement provided: "This agreement shall be governed by and construed in accordance with the laws of the State of New York." 652 F.Supp. at 473