Frank CARDER *v.* Bruce BURROW

96-828                                      940 S.W.2d 429

Supreme Court of Arkansas
Opinion delivered March 17, 1997

*Hatfield & Lassiter*, by: *Richard F. Hatfield*, for appellant.

*The Rose Law Firm, A Professional Association*, by: *Herbert C. Rule, III* and *Kathryn Bennett Perkins*, for appellee.

W.H."DUB" ARNOLD, Chief Justice. This case involves the question of whether a transaction between Appellant Frank Carder and Corporate Furnishings, Inc. (of which Appellee Bruce

Burrow was an organizer and president), is a security within the definition in the Arkansas Securities Act, Ark. Code Ann. § 23-42-102. Appellant Carder filed suit claiming that the transaction was an unauthorized sale of a security, and, thus, he was entitled to recovery pursuant to the Arkansas Securities Act. The trial court dismissed the action upon a finding that the transaction was not the sale of a security but instead a commercial loan.

Corporate Furnishings, Inc. (hereinafter "CFI"), was incorporated in January 1989 by Appellee Bruce Burrow and others with the purpose of buying used office furniture for resale. George Carder III, son of Appellant Carder, subsequently became a forty-seven percent stockholder.

On behalf of CFI, George Carder offered Appellant Carder the opportunity for Appellant Carder to purchase stock. Appellant Carder refused the offer to become a stockholder, and he testified that he offered to loan CFI money instead of purchasing stock because of the added protection that he would obtain as a secured creditor. Appellant Carder then made a loan to CFI, and a promissory note was executed by CFI. Pursuant to the note, the initial loan sum was $100,000 with the option of additional advances; the terms required CFI to pay accrued interest quarterly and pay one-fourth (1/4) of the outstanding principal annually. The interest rate on the initial loan and all subsequent loans was to be calculated at a rate of five percent per annum above the federal discount rate calculated at the time of each loan — the maximum rate allowed by Arkansas law. The loan was collateralized by all of the furniture, fixtures, equipment, and inventories owned at that time or in the future by CFI; a UCC security agreement was filed.

In 1992, CFI defaulted; Appellant Carder filed suit for recovery of the sum transferred to CFI with interest at six percent per annum plus attorney's fees pursuant to Ark. Code Ann. § 23-42-106(a)(1). The trial court determined that it was Appellant Carder's intention that this loan be a "floor plan" loan, with which he was familiar through his dealings in the automobile industry.

Appellant Carder treated money paid to him by CFI as interest income on his tax returns and testified that he characterized

the transactions as "floor plan financing." The circuit court further found that Appellant Carder was a sophisticated investor with experience in a broad range of business and loan transactions and that Appellant Carder had access to information regarding CFI's financial performance as well as the status of its inventory through his son, a major stockholder.

Additionally, the trial court found that the note was not a part of a broad scale public offering by CFI. Also, the circuit court noted that most of CFI's venture capital came from several loans, some of which were repaid with the proceeds of the loan from Appellant Carder.

Under Ark. Code Ann. § 23-42-106(a)(1), any person who offers or sells a security in violation of the Arkansas Securities Act is liable to the person buying the security either in law or equity. In order for a claimant to recover pursuant to this section, the transaction in question must be a security as defined by the Arkansas Securities Act. Ark. Code Ann. § 23-42-102(12)(A) defines "security" as follows:

> "Security" means *any note*; stock; treasury-stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreements; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; variable annuity contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security" or any certificate of interest or participation, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

(Emphasis supplied.) Section 23-42-102(12)(B)(i) further provides that the terms "sale" or "sell" do not include any bona fide pledge or loan.

In *Schultz v. Rector-Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4, 8 (1977), we chose to utilize a flexible approach when interpreting the definition of "security." Because the statutory definition is extremely broad and can encompass most commercial transactions, we determined that not all "notes" should be consid-

ered securities; however, we emphasized that the definition should not be too narrowly construed or it could be inapplicable to transactions of the nature which the Act was adopted to prevent. This approach was adopted so that the Arkansas Securities Act could "encompass the endless succession of new and innovative or old and tired promotional schemes, where the promoters, by design seek to risk the money or property of others in their venture." *Id.* at 8. Further, we noted that the Arkansas Securities Act was promulgated to protect investors, so a broad and flexible definition should govern which transactions constitute securities under this section. *Id.*

Noting that shrewd promoters could label transactions with key words to avoid implicating this statute, we determined that the name of a particular transaction or offering was not a decisive factor; we stated, "regardless of labels, the Arkansas Securities Act was designed to protect both investors in common stock and those persons who in substance are the investors in the disguised business venture of another." *Id.*

■ In *Smith v. State*, 266 Ark. 861, 587 S.W.2d 50, 52 (Ark. App. 1979), the Arkansas Court of Appeals noted that the obvious purpose of the Securities Act is to "protect the general public." This protection promotes full disclosure of important information to investors, a policy which the U.S. Supreme Court has determined as the general public policy behind all such securities acts. *Id. citing, S.E.C. v. Ralston Purina Co.*, 346 U.S. 1999 (1953).

■ The Court of Appeals in *Smith* utilized a five-element test in its analysis of whether the transaction before them was a security. These five elements are as follows: (a) The investment of money or money's worth; (b) in a venture; (c) the expectation of some benefit to the investor as a result of the investment; (d) the contribution towards the risk capital of the venture; and (e) the absence of direct control over the investment or policy. *Id.*

■ Pursuant to the *Smith* factors, investors must expect some "benefit," or profit, from the transaction. The Eighth Circuit Court of Appeals, in *First Financial Federal Savings & Loan*

*Association v. E.F. Hutton Mortgage Corp.*, 834 F.2d 685 (8th Cir. 1987), examined the Arkansas Securities Act and determined that a fixed rate of interest payable at fixed times did not constitute the "expectation of benefit" needed to make a note a security because it did not give the holder "an opportunity for either capital appreciation or participation in the earnings" of the company. *Id.* at 689. The court of appeals further stated that "we do not believe that a fixed rate of return is an 'expectation of benefit to the investor' as contemplated by the Arkansas Court of Appeals in *Smith v. State.*" *Id.*

In *Grand Prairie Savings and Loan Association, Stuttgart v. Worthern Bank and Trust Co.*, 298 Ark. 542, 769 S.W.2d 20 (1989), we applied the *Smith* test and upheld the trial court finding that loan participation by banks were not securities under the Arkansas Securities Act. We determined that

> The definition section . . .clearly indicates that the term "security" as used in the Act should be construed in its ordinary sense 'unless the context otherwise requires." The purpose of the Act is clearly remedial and is intended to prevent fraudulent practices and activities from becoming a burden upon unsophisticated investors and the general public."

*Id.* at 22. *See also, Cook v. Wills*, 305 Ark. 442, 808 S.W.2d 758 (1991) (applying the *Smith* test, stocks from a new entity formed by merging two businesses were found to be securities).

The trial judge was correct in examining all of the factors involved in the execution of this transaction in determining that the transaction between Appellant Carder and CFI was an ordinary secured commercial loan between two parties, not the sale of a security as defined in the Arkansas Securities Act. We conclude that there was sufficient evidence for the trial court to rule that the transaction was an isolated commercial loan and not the sale of a security.

Specifically, Appellant Carder did invest money in CFI which was used to fund its operations and was used as "risk capital." Appellant Carder expected to profit from the transaction through the receipt of the highest interest rate permissible by Arkansas law; however, the loan rate was not dependent upon

earnings of the corporation, and payment of the loan was expected regardless of company profitability. There was no expectation to "profit" from this transaction as if it were an investment; the loan was accounted for in Carder's books as an account receivable and on his income tax return as "interest income" instead of dividends. According to the trial court, Appellant Carder was "anything but an unsophisticated investor"; he owned several companies, served as an officer in several corporations, and utilized "floor plan" loans on many occasions through his automobile dealership. Appellant Carder initially was given the offer to become a stockholder and refused this offer, making a conscious choice to instead offer a commercial loan to CFI.

This transaction was not part of a broad solicitation for investments by CFI. There were no allegations of fraud nor was this a situation involving a scheme devised to deceive uninformed investors.

■   Accordingly, the trial court was correct in concluding that this was not the sale of a security as defined by the Arkansas Securities Act.

Affirmed.

BROWN, J., not participating.