Paul E. Danielson, Justice, dissenting. |14I would affirm the circuit court’s ruling that the loan transactions at issue were not securities within the purview of the Arkansas Securities Act, currently codified at Arkansas Code Annotated §§ 23-42-101 to -509 (Repl.2012 & Supp.2013). Even if the circuit court’s order fails to mention any reliance on Schultz v. Rector-Phillips-Morse, Inc., 261 Ark. 769, 552 S.W.2d 4 (1977), that decision and its all-factor consideration was well argued before the circuit court, and I believe that under our de novo review, the circuit court’s ruling can be affirmed as reaching the right result. See Madden v. Aldrich, 346 Ark. 405, 58 S.W.3d 342 (2001) (recognizing that this court will affirm a trial court when it has reached the right result, even though it may have announced the wrong reason). I therefore respectfully dissent. From my review of the record, the transactions in the instant case consisted of private loans by the Appellees’ clients that were purportedly secured and made at a fixed rate of interest for a one-year period. As in Carder v. Burrow, 327 Ark. 545, 940 S.W.2d 429 (1997), there was no expectation by those extending the loan to profit from the transactions as if they were investments; instead, the sole expectation was the receipt of interest on the loaned amount. But, in addition, even if it could be said that the initial loan was an investment of sorts, there is no evidence that the loan rate was in any way dependent on the borrower’s earnings. See Carder, 327 Ark. 545, 940 S.W.2d 429. Moreover, while the borrower of the funds allegedly engaged in some type of real-estate venture, the success or failure of the borrower’s venture really had no effect on the transaction at all; like a typical loan, the interest | ]5was due the Appellees’ clients regardless. Likewise, there was no benefit to be extended as a result of the investment, no contribution to the risk capital of the venture, nor was control an issue because the loan was not tied to the venture’s success or failure. By its very definition, an investment is “[a]n expenditure to acquire property or assets to produce revenue; a capital outlay,” which is very different from a loan, defined as “[a]n act of lending; a grant of something for temporary use” or “[a] thing lent for the borrower’s temporary use; esp., a sum of money lent at interest.” Black’s Law Dictionary 954, 1077-78 (10th ed.2014). Indeed, this court has recognized that “the underlying economic substance of a security is an arrangement where the investor is a mere passive contributor of risk capital to a venture in which he has no direct or managerial control.” Casali v. Schultz, 292 Ark. 602, 605, 732 S.W.2d 836, 837 (1987). There is no such arrangement in the instant case. Here, the Appellees’ clients extended sums of money with the sole expectation of receiving interest and ultimately having their money repaid. Furthermore, their realization of interest was in no way tied to the efforts, successes, -or failures of the borrower or venture, but was tied only to the borrower’s ability to pay. In light of these circumstances, I cannot say that the transactions at issue were securities; they were simply nothing more than loans, albeit in hindsight, risky ones. While the Commissioner urges this court to examine the transactions as notes using the federal test set forth by the United States Supreme Court in Reves v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), I, like the majority, see no need to do so. This court has consistently followed Schultz, 261 Ark. 769, 552 S.W.2d 4, and looked at all of the factors in any given |transaction, including a consideration of the Smith factors when doing so.[6] See, e.g., Carder, 327 Ark. 545, 940 S.W.2d 429; Cook v. Wills, 305 Ark. 442, 808 S.W.2d 758 (1991); Grand Prairie Sav. & Loan Ass’n v. Worthen Bank & Trust Co., 298 Ark. 542, 769 S.W.2d 20 (1989). That has been the law in Arkansas, and it should remain so. For the foregoing reasons, I would affirm the circuit court’s order. Hannah, C.J., and Hart, J., join. . Notably, the Carder opinion made no mention of Reves even though it had been decided almost seven years before Carder and was discussed in the parties’ briefs on appeal.