IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


IAN T. BILLINGTON,

      Appellant,

 v.                                       Case No.  5D14-2177


GINN-LA PINE ISLAND, LTD, LLLP, ET AL.,

      Appellees.

_____/

Opinion filed  May 20, 2016

Appeal from the Circuit Court
for Lake County,
Michael G. Takac, Judge.


Philip K. Calandrino, and Thomas S. Dolney,
of Calandrino Law Firm, P.A., d/b/a Small
Business Counsel, Winter Park, for Appellant.


Darryl M. Bloodworth, of Dean, Mead,
Egerton, Bloodworth, Capouano & Bozarth,
P.A., Orlando,  Lubert-Adler Partners, L.P.,
Dean Adler, and Ira Lubert, for Appellees.

Lawrence H. Kunin and Robert P. Alpert, of
Morris, Manning Martin, LLP, Atlanta, GA, for
Appellees, Ginn-La Pine Island LTD., LLLP,
Ginn-Pine Island, GP, LLC and Ginn
Development Company, LLC.

TORPY, J.

This dispute arises from the sale and purchase of two high-end residential lots. The lower court dismissed Appellant's fifth amended complaint for failure to state a cause of action. Appellees correctly advance several arguments supporting the dismissal, but we confine our discussion to the effect of the contractual "disclaimer" clauses on the fraud claims. Concluding that the "non-reliance" and "waiver" components of the disclaimer clauses negate Appellant's fraud claims, we affirm. We certify several questions of great public importance to the Florida Supreme Court because it has not addressed the effect of disclaimer clauses in this context in nearly 75 years, and its last pronouncement has resulted in conflicting interpretations. *See Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689 (Fla. 1941).[1]

Appellant, Ian T. Billington, and Appellee, Ginn-LA Pine Island, Ltd., LLLP ("Pine Island"), executed a $1.35 million contract for the sale and purchase of lot 137 in the Bella Collina development in Lake County, Florida. The contract contained several disclaimer clauses relevant to this appeal, including:

> 14. <u>BROKER AGENCY DISCLOSURE; COMMISSIONS; DISCLAIMER OF REPRESENTATIONS</u>.
>
> . . . .
>
> NOTE: BEFORE BUYER SIGNS THE CONTRACT, BUYER SHOULD READ IT CAREFULLY AND IS FREE TO CONSULT AN ATTORNEY OF BUYER'S CHOICE.
>
> . . . .

---

[1] See *infra* for a discussion of some of the conflicting interpretations of *Oceanic Villas.*

c. Buyer understands and acknowledges that the salespersons representing Seller in connection with this transaction do not have authority to make any statements, promises or representations in conflict with or in addition to the information contained in this Contract and the Community Documents, and Seller and Broker hereby specifically disclaim any responsibility for any such statements, promises or representations. By execution of this Contract, <u>Buyer acknowledges that Buyer has not relied upon such statements, promises or representations, if any, and waives any rights or claims arising from any such statements, promises or representations.</u>

. . . .

ANY CURRENT OR PRIOR UNDERSTANDINGS, STATEMENTS, REPRESENTATIONS, AND AGREEMENTS, ORAL OR WRITTEN, INCLUDING, BUT NOT LIMITED TO, RENDERINGS OR REPRESENTATIONS CONTAINED IN BROCHURES, ADVERTISING OR SALES MATERIALS AND ORAL STATEMENTS OF SALES REPRESENTATIVES, IF NOT SPECIFICALLY EXPRESSED IN THIS CONTRACT OR IN THE COMMUNITY DOCUMENTS, ARE VOID AND HAVE NO EFFECT. <u>BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS NOT RELIED ON ANY SUCH ITEMS.</u>

(Emphasis added). Appellant and Pine Island later executed a $1.64 million contract for the sale and purchase of lot 439 in the same development. That contract contained clauses substantially identical to those in the lot 137 contract.

After both transactions closed, Appellant brought suit against Pine Island and several associated entities and individuals claiming, among other things, that he had been induced to execute the contracts by fraudulent misrepresentations. Appellant alleged misrepresentations concerning the ability to construct private boat docks on the lots as well as the purchase price of other lots sold to different buyers. After numerous amendments, the trial court dismissed the relevant counts in the fifth amended complaint

3

with prejudice.[2]   Appellant initially challenges the propriety of the dismissal, arguing that the court improperly went beyond the allegations in the complaint.  Appellant correctly argues that he alleged reliance, which is itself a sufficient allegation to survive a motion to dismiss; however, because Appellant attached the contracts to the complaint, it was appropriate to dismiss the complaint if the terms of the contracts contradicted the allegation as pled. *See Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1055-56 (Fla. 4th DCA 1999); *Harry Pepper & Assocs., Inc. v. Lasseter*, 247 So. 2d 736, 736-37 (Fla. 3d DCA 1971). Because the disclaimer clauses in the contracts here contradicted Appellant's assertion of actual reliance and effectively waived this claim, we conclude that dismissal was proper.

There appear to be three categories of disclaimer clauses identified in court decisions and treatises.  First, there are "merger" or "integration" clauses, which are clauses that purport to make extrinsic agreements unenforceable unless they are contained within the written contract. *Mejia v. Jurich*, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001).  These clauses might also contain statements that negate the authority of an agent to vary the terms of the agreement.  *See* Restatement (Second) of Contracts § 216 cmt. e (Am. Law Inst. 1981) (observing that merger clause "may negate the apparent authority of an agent to vary orally the written terms").  Second, there are "non-reliance," "no-reliance" or "anti-reliance" clauses, which state that the parties to the contract did not rely

---

[2] Although other claims remain pending, we have jurisdiction here because several parties were completely removed from the action upon dismissal of the pertinent claims. We also concluded previously, by separate order in this case, that the remaining counts are separate and distinct for purposes of appellate jurisdiction. *See* Fla. R. App. P. 9.110(k).

upon statements or representations not contained within the document itself. *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002). Finally, there are clauses that purport to waive or release claims for fraud. *See, e.g.*, *Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 768 (Tex. App. 2012) (describing waiver or release as broadest form of disclaimer for fraud). While the contracts at issue here contain all three of these categories of disclaimers, our decision turns on the non-reliance and waiver clauses.

In *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 714 n.1 (Fla. 5th DCA 1998), this court addressed the subject of non-reliance clauses, stating in dictum that a contractual agreement to "forego reliance on any prior false representation and limit . . . reliance to the representations . . . expressly contained in the contract" has the binding effect of negating an action based on fraud in the inducement. Although some courts have adopted a contrary approach,[3] this appears to be the rule in the majority of jurisdictions. *See, e.g.*, *Insitu, Inc. v. Kent*, 388 F. App'x 745 (9th Cir. 2010) (applying Washington law, "no-reliance" clause barred claims for fraud and promissory estoppel as matter of law); *Rissman v. Rissman*, 213 F.3d 381, 383-84 (7th Cir. 2000) ("non-reliance" clause precluded claim for securities fraud); *Bank of the West v. Valley Nat'l Bank of Ariz.*,

---

[3] Some of the contrary authorities decline to enforce non-reliance clauses against a non-sophisticated party. We cannot discern a logical basis for a distinction based on the sophistication of the party against whom the clause is sought to be enforced, because all parties, big and small, are bound by the terms of a contract. In any event, the size of the transactions here clearly supports the inference that the parties were on equal footing. Some courts also decline enforcement of clauses lacking in clarity or specificity. Here, the disclaimers are both clear and specific. The non-reliance language in particular, without use of legalese, clearly expresses a notion that most contracting parties should understand. Indeed, the use of a written contract itself should give caution that material components of the agreement must be expressed in the instrument.

41 F.3d 471, 477-78 (9th Cir. 1994) (applying California law, "plain and strong words" of no-reliance clause precluded fraud claim as matter of law); *First Fin. Fed. Sav. & Loan Ass'n v. E.F. Hutton Mortg. Corp.*, 834 F.2d 685, 687 (8th Cir. 1987) (disclaimer of reliance on representation negated claim for fraud); *Landale Enters., Inc. v. Berry*, 676 F.2d 506, 507-08 (11th Cir. 1982) (applying Alabama law, non-reliance clause negated fraud claim); *LeTourneau Techs. Drilling Sys., Inc. v. Nomac Drilling, LLC*, 676 F. Supp. 2d 534, 543 (S.D. Tex. 2009) (applying Texas law, disclaimer of reliance on prior representations negated claim for fraud); *Abry Partners V, L.P. v. F & W Acquisition, LLC*, 891 A.2d 1032, 1057-58 (Del. Ch. 2006) (party could not promise not to rely on prior representations and then "shirk its own bargain" by asserting in lawsuit that it in fact relied); *Weinstock v. Novare Grp., Inc.*, 710 S.E.2d 150, 155-56 (Ga. Ct. App. 2011) (comprehensive merger clause with no-reliance provisions negated fraud in inducement claim); *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 598-99 (N.Y. 1959) (no-reliance clause in lease precluded claim for fraud); *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) (party could not sign contract denying reliance on prior representations then later claim reliance on such representations).[4]

---

[4] Some of these decisions couch their holdings in terms of whether there was a lack of "justifiable" or "reasonable" reliance. That potentially distinguishing feature has no bearing on our analysis because the disclaimer clauses here establish a lack of actual reliance. Though not essential to our conclusion, the parties here all agreed in their briefing that "justifiable" reliance must be established by Appellant. Indeed, Appellant pled "justifiable reliance" in several paragraphs of the fifth amended complaint. None of the parties, however, addressed the Florida Supreme Court's decision in *Butler v. Yusem*, 44 So. 3d 102 (Fla. 2010), wherein the court stated that "justifiable" reliance is not an element of a claim for fraud. *Id.* at 105. We are mindful that our high court does not overrule itself *sub silentio. See Puryear v. State,* 810 So. 2d 901, 905 (Fla. 2002). As a result, we must view *Butler's* discussion in context and against the backdrop of earlier cases from our high court expressing contrary holdings. *See, e.g., Avila S. Condo. Ass'n v. Kappa Corp.*,

6

347 So. 2d 599, 604 (Fla. 1977) (fraud "complaint [must] alleg[e] **reasonable reliance** on material misrepresentations of existing fact") (emphasis added); *Fote v. Reitano*, 46 So. 2d 891, 893 (Fla. 1950) (judgment for fraud reversed because plaintiff did not prove "justified" reliance).

We note that *Butler* does not mention *M/I Schottenstein Homes v. Azam*, 813 So. 2d 91 (Fla. 2002), wherein the court framed the question in terms of whether reliance was "justified" and acknowledged its previous adoption of Restatement (Second) of Torts § 540 (1977). Section 540 contains a corollary to section 537's requirement of justified reliance as an element of fraud. The two sections go hand-in-hand. If reliance need not be "justifiable," section 540 is unnecessary. *See* Restatement (Second) of Torts § 540 (1977) ("recipient of fraudulent misrepresentation is **justified** in relying upon truth, although he might have ascertained the falsity . . . had he made an investigation") (emphasis added); *Id.* § 537 ("justifiable" reliance must be established to prove fraud).

We interpret *Butler* to hold that, consistent with the Restatement (Second) of Torts, a lack of due diligence or investigation into the truth of a representation does not negate the claim of justifiable reliance. That was the holding in *Besett v. Basnett,* 389 So. 2d 995, 998 (Fla. 1980), upon which *Butler* relied. The other case upon which *Butler* relied, *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985), citing *Besett,* concluded that "[plaintiffs'] reliance on the truth of the [defendants'] representation was **justified** . . ." *Id.* at 628 (emphasis added). *See* Peter A. Alces, *Law of Fraudulent Transactions* § 2:18 & n.57.70 and accompanying text (categorizing *Butler* at "far end of spectrum" regarding "justifiable" reliance as modifier of element of fraud). Nevertheless, even if our interpretation of *Butler* is incorrect, our conclusion in this case turns on a lack of actual reliance, not necessarily on whether the reliance was justified or reasonable.

Florida courts, like other jurisdictions, at times use the phrases "justifiable reliance" and "reasonable reliance" interchangeably when addressing fraud claims. Nearly every district court has used both such phrases at one time or another. It appears, however, that the two phrases establish different standards, the latter of which is said to impose a higher burden on the claimant. *See Field v. Mans*, 516 U.S. 59, 81 (1995) ("justifiable" reliance, rather than the heavier burden of "reasonable reliance" must be established to prove fraud (quoting William L. Prosser, *Law of Torts* 718 (4th ed.1971) (footnotes omitted))); *accord* W. Page Keeton, et al., *Prosser and Keeton on Torts* 752 (5th ed. 1984); *see also In re Vann,* 67 F.3d 277, 282-85 (11th Cir. 1995) (adopting "justifiable reliance" standard in lieu of "actual reliance" or "reasonable reliance").

We think the "justifiable" standard is a minimally essential filter to preclude fraud claims where purported reliance strains logic and reason, such as when the representation is obviously false. As one leading commentary states, the "justifiable reliance" standard provides "some objective corroboration to plaintiff's claim that he did rely." W. Page Keeton, et al., *supra*, at 750.

7

Curiously, Appellant cites *La Pesca Grande Charters* in support of his argument that his fraud claim is not negated here. In doing so, he contorts a partial quote from the case, fails to state the holding of the case and ignores the dictum that is directly contrary to his position. *See* 704 So. 2d at 714 n.1. Nevertheless, Appellant also relies upon *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689 (Fla. 1941), for the proposition that the contractual disclaimer clauses in the instant case do not negate a claim for fraud. *Oceanic Villas* involved a claim for misrepresentation of past earnings, which purportedly induced execution of a long-term lease. 4 So. 2d at 690. The lease contained what Appellant labels a "merger" clause, but which we discern is more akin to a "non-reliance" clause.[5] *See id.* The trial court dismissed the complaint, apparently based upon the language of the clause. *Id.* The Florida Supreme Court quashed the order in part, concluding on "policy grounds" that the clause did not bar an action for fraud. *Id.* at 690-91. Although the court concluded that the clause there did not negate the fraud claim, it recognized that parties to a contract, "for consideration or expediency," may include provisions that render the contract "incontestable on account of fraud." *Id.* at 690.

*Oceanic Villas* has generated considerable confusion in the lower courts, given its attempt to distinguish *Cassara v. Bowman*, 186 So. 514 (Fla. 1939), a case decided just two years earlier. *Cassara* also involved purported fraud in the inducement of a lease where the alleged fraud involved misrepresentations concerning the amount of profits, prior rental receipts and other facts. 186 So. at 514. The supreme court affirmed the dismissal of a complaint based on an integration clause. *Id.* Rather than overrule

_____

[5] The lease stated that "Lessee . . . in executing this lease . . . has not been . . . influenced by any representations of the Lessors as to . . . earning capacity thereof . . . ."

8

*Cassara*, in *Oceanic Villas*, the supreme court distinguished its earlier precedent but not based on the language used in the disclaimer clauses. *Oceanic Villas*, 4 So. 2d at 691. Instead, it stated that the allegations in the complaints in the two cases were "entirely different." *Id.*

Courts have struggled to reconcile and apply *Oceanic Villas* and *Cassara*, yielding conflicting results. For example, a panel of our court previously held that *Cassara* and *Oceanic Villas* are irreconcilable, and that the latter case overruled the earlier one *sub silentio. Deluxe Motel, Inc. v. Patel*, 727 So. 2d 299, 301 (Fla. 5th DCA 1999). That decision involved a merger clause but did not concern non-reliance or waiver of misrepresentation clauses. The Third District Court of Appeal has followed both cases with conflicting results. *Compare Cas-Kay Enters., Inc. v. Snapper Creek Trading Ctr., Inc.*, 453 So. 2d 1147, 1148 (Fla. 3d DCA 1984) (citing *Oceanic Villas* for proposition that "integration clause" does not negate fraud claim), *with Weiss v. Cherry*, 477 So. 2d 12, 13 (Fla. 3d DCA 1985) (citing *Cassara* for proposition that fraud claim does not "survive" integration clause), *and Wasser v. Sasoni*, 652 So. 2d 411, 413 (Fla. 3d DCA 1995) (citing *Cassara* and *Weiss* for proposition that integration clause negates fraud claim). The *Cas-Kay Enterprises* court said that *Cassara* did not involve a fraud claim. 453 So. 2d at 1148. One year later in *Weiss*, involving two of the same panel members, the court relied upon *Cassara* and correctly labelled it as a fraud case. 477 So. 2d at 13; *see also Beeper Vibes, Inc. v. Simon Prop. Grp. Inc.*, 600 F. App'x 314, 318 (6th Cir. 2014) (applying Florida law, attempting to reconcile *Oceanic Villas* and *Cassara*, concluding that former does not prohibit action for fraud in face of non-reliance clause, but under *Cassara*, such claim cannot be proven).

Mindful that the Florida Supreme Court does not overrule itself *sub silentio*, we are compelled to reconcile *Oceanic Villas and Cassara*. *See, e.g.*, *Puryear*, 810 So. 2d at 905 (Florida Supreme Court does not intentionally overrule itself *sub silentio*). Because the factual allegations of fraud in the two cases appear identical, the only distinguishing feature is the language in the disclaimer clauses. In *Cassara*, the lease contained a classic "merger" or "integration" clause. 186 So. at 514. The contract in *Oceanic Villas* contained a "non-reliance" clause. 4 So. 2d at 690. Accordingly, a superficial resolution of the apparent conflict between the cases is that a "merger" clause negates a fraud claim but a "non-reliance" clause does not. Because the contracts at issue here contain both such clauses, it would follow from *Cassara* that the "merger" language negates Appellant's fraud claim.

The difficulty we have in attempting to reconcile the cases on this basis is that it defies logic and goes against the grain of virtually all of the cases that have addressed the distinction between the two types of clauses. These cases have concluded that non-reliance clauses negate claims for fraud, but integration or merger clauses do not. This distinction is explained by Judge Posner in *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 644 (7th Cir. 2002). There, he explains that merger or integration clauses are intended to prevent a party from introducing parol evidence to vary the terms of a written contract. *Vigortone*, 316 F.3d at 644. Because fraud is a tort, such a clause does not negate the tort claim. *Id.* A "non-reliance" clause, on the other hand, is intended to "head off the possibility of a fraud suit" by binding the parties to a promise that they have not relied upon extrinsic representations. *Id.* The latter negates a claim for fraud because it constitutes a contractual agreement on one element of a fraud claim—

reliance. *Id.*; *see also* Restatement (Second) of Contracts § 196 (Am. Law Inst. 1981) (noting distinction between merger clause and no-reliance clause, the latter negating a claim for fraud). Indeed, to permit a party to contradict such a promise made in a non-reliance clause is to sanction a breach of the very contract that is the subject of the dispute. As New York's highest court explained:

> Were we dealing solely with a general and vague merger clause, our task would be simple. A reiteration of the fundamental principle that a general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract would then be dispositive of the issue. . . . To put it another way, where the complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud—either in the inducement or in the execution—despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made. . . . Here, however, plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded. Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance on these contrary oral representations . . . .

*Danann Realty Corp.*, 157 N.E.2d at 599.

Alternatively, even if we assume that *Oceanic Villas* silently overruled *Cassara*, we would reach the same conclusion on the facts of this case. While the Florida Supreme Court held that the disclaimer clause in *Oceanic Villas* did not negate the fraud claim in that case, it nevertheless validated some disclaimer clauses where the parties manifest the intent to render the contract "incontestable . . . on account of fraud." *Oceanic Villas*, 4 So. 2d at 690. The decision draws a distinction between a contractual affirmation that "no fraud has been committed," which does not negate a fraud claim, and a contract that stipulates that, even if a fraud "may have been committed," such a claim may not be

11

asserted. *Id.* at 691. We interpret this to mean that an express waiver of the right to maintain a fraud claim is all that is required to avoid liability for fraud. *See id.* at 690-91. If our interpretation is correct, the contracts at issue here do that and much more. Among other components of the disclaimers is a "waive[r of] any rights or claims arising from any such statements, promises or representations."

Accordingly, we hold that the "non-reliance" clauses in this case negate a claim for fraud in the inducement because Appellant cannot recant his contractual promises that he did not rely upon extrinsic representations. *See, e.g.*, *Wasser,* 652 So. 2d at 411. We also conclude, pursuant to *Oceanic Villas*, that an express waiver of the right to base a claim on pre-contract representations renders the contract "incontestable . . . on account of fraud." *Oceanic Villas*, 4 So. 2d at 690. We emphasize that the disclaimer clauses here are as clear and conspicuous as they are comprehensive. If these clauses are insufficient to render a claim for fraud "incontestable" within the contemplation of the *Oceanic Villas* court, then no disclaimer can possibly accomplish that objective—an objective that is both reasonable and essential in our complex and litigious society. Written contracts are intended to head-off disputes. Public policy strongly favors the enforcement of contracts. Although our decision might benefit those who would use a disclaimer clause to cleverly avoid the consequences of a deliberate fraud, contracting parties can protect themselves against such fraudulent practices by respecting the gravity inherent in the contracting process and carefully reviewing a contract to ensure that material representations are expressed in the instrument. The law necessarily presumes that parties to a contract have read and understood its contents. Were we to reach a contrary holding, contracting parties would have no ability to protect themselves against those who would fabricate

12

claims of fraud to avoid the consequences of a contractual obligation. On balance, the sanctity of a contract and predictability of an outcome in a dispute should take precedence where, as here, the parties clearly manifest the intent to avoid such claims.[6]

We distinguish *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So. 3d 517 (Fla. 4th DCA 2011), to the extent that the disclaimer language there did not contain a waiver. We disagree with and express conflict with our sister court's conclusion that a "non-reliance" clause does not negate a claim for fraud. We note that an earlier case from the same court relied in part on an "integration" clause to affirm the dismissal of a complaint for fraud in the inducement. *Yamamura*, 727 So. 2d at 1055-56.

We certify the following questions to the Florida Supreme Court as involving great public importance:

> Did the court's decision in *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689 (Fla. 1941), *sub silentio* overrule its decision in *Cassara v. Bowman,* 186 So. 514 (Fla. 1939)?
>
> If *Oceanic Villas* did not overrule *Cassara*, does a merger clause such as that discussed in *Cassara*, negate a claim for fraud?
>
> Do clear and unambiguous disclaimer clauses, such as those in this case, negate or "ma[ke] incontestable" a claim for fraud as discussed in *Oceanic Villas*?

---

[6] Appellant argues in the alternative that the misrepresentation regarding the private boat dock is not negated by the disclaimer because the disclaimer contains an exception for representations that are contained in the "community documents." He asserts in his brief, without citation to the record, that the "community documents . . . discuss the right of a lakefront owner to build a dock on his property . . . ." The "community documents" are not in the record and the fifth amended complaint does not contain this allegation. At oral argument, Appellant acknowledged that this argument is not supported by the record. Accordingly, we disregard the argument and caution counsel that unsupported statements of fact in briefs may result in sanctions.

13

Does a clear and unambiguous non-reliance clause negate a claim for fraud, where one party alleges justifiable reliance on an extrinsic representation?

Did *Butler v. Yusem*, 44 So. 3d 102 (Fla. 2010), overrule *Fote v. Reitano*, 46 So. 2d 891 (Fla. 1950), and *Avila South Condominium Ass'n v. Kappa Corp.*, 347 So. 2d 599 (Fla. 1977), and reject Restatement (Second) of Torts § 537, by holding that reliance need not be justified to maintain a fraudulent misrepresentation claim?

If *Butler* did not overrule *Fote* or *Avila*, which standard applies in Florida, "justifiable" reliance or "reasonable" reliance?

AFFIRMED; CONFLICT ACKNOWLEDGED; QUESTIONS CERTIFIED.

PALMER J., and HARRIS, J.M., Associate Judge, concur.