IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

WINFIELD INVESTMENTS, LLC, IVAN
BROTHERTON, DAISY BROTHERTON,
ARTHUR WINFIELD AND GLORIA WINFIELD,

      Appellants,

 v.                                         Case No.  5D17-1304

PASCAL-GASTON INVESTMENTS, LLC,

      Appellee.
_____/

Opinion filed August 17, 2018

Appeal from the Circuit Court
for Orange County,
Donald A. Myers, Jr., Judge.

Quoc Van, Sanford, for Appellants.

Keith A. Graham and Shannon M. Wiggins,
of Marchena and Graham, P.A., Orlando,
for Appellee.

PER CURIAM.

Ivan and Daisy Brotherton, and Arthur and Gloria Winfield (collectively "Defendants"), appeal the trial court's final judgment, which found Defendants liable for breach of warranty, unjust enrichment, and fraud.  As to the count for breach of warranty, the trial court found Defendants individually liable by piercing the corporate veil of Winfield Investments, LLC.  (Defendants were the sole members of Winfield Investments.)  We

affirm the judgment of liability regarding breach of warranty without further discussion. For the reasons explained, we reverse the remainder of the judgment under review.

In 2005 Adriana and Blanca Leon executed a purchase-money mortgage and promissory note in favor of U.S. Bank. The mortgage was recorded in the public records of Orange County, Florida as a lien against the property. In 2011 U.S. Bank filed a foreclosure complaint against the Leons and Glenmuir Homeowners Association, Inc. ("Glenmuir") alleging continuing default beginning September 2009. In January 2012, Glenmuir filed a cross-claim for foreclosure against the Leons claiming that they had failed to pay assessment fees.

In April 2012, a trial court entered a final judgment of foreclosure in Glenmuir's favor on its junior lien and ordered the Clerk of Court to sell the property at a public sale if the Leons failed to pay the amount owed. In May 2012, Defendants, through Winfield Investments, purchased the property by bidding $12,700 at the foreclosure sale. The certificate of title issued to Defendants was captioned "U.S. Bank National Association, as Trustee for the Certificateholders of Harborview Mortgage Loan Trust . . . v. Adriana P. Leon, Blanca Leon, et al."

Five months later, in October 2012, Pascal-Gaston Investments, LLC ("PGI"), through Maurice Simpson, a realtor hired by PGI to handle the transaction, offered to purchase the property from Winfield Investments. The parties eventually entered into a contract, which provided in pertinent part that the property was "[p]urchased as is, subject to lien amounts being verified." This contract was executed by both parties in early November 2012. In the contract, PGI promised to pay Defendants $70,000. In exchange, Defendants promised to "convey marketable title to the Real Property."

2

PGI hired First American Title Insurance Company ("First American") to perform the title search. As previously indicated, the mortgage in favor of U. S. Bank was recorded in the public records as a lien on the property. A cursory search of those records would have revealed the existence of the mortgage in the chain of title. Nevertheless, First American informed PGI before closing that all liens on the property had been cleared, offered to insure title, and prepared a warranty deed. First American subsequently paid PGI the limits of its title insurance policy for its failure to reveal the existence of the mortgage.

On November 29, 2012, Defendants executed the warranty deed in favor of PGI. All Defendants signed the deed. The deed contained a covenant against encumbrances, stating that the property was "free of all encumbrances except taxes," and a covenant of warranty, promising that Defendants would "defend [title] against the lawful claims of all persons." On December 21, 2012, U.S. Bank obtained a final summary judgment of mortgage foreclosure in its favor, in which the trial court found that U.S. Bank was owed $441,297.08 on its senior lien.

From December 2012 until March 2013, one of PGI's members—Ted Khoury, who held equal ownership of the company with his wife—worked to improve the subject property. Because the property had been severely vandalized, Khoury replaced the air conditioning system, the doors and door frames, the kitchen cabinets, the kitchen island, and the electrical system; he sanded the floors, painted the interior, and completely replaced a bathroom, among other improvements. In a deposition, Khoury testified that he spent about $36,000 on labor and materials, excluding his own efforts. He testified that the "labor [he] put into the property" was worth "about $15,000."

3

In early April 2013, Khoury found an eviction notice on the front door. He soon discovered that "U.S. Bank had a first mortgage on the property." PGI sent a demand letter to Defendants requesting defense of title, but Defendants did not make an effort to defend it. After PGI received $70,000 from First American, the limit of the title insurance policy, PGI purchased the property from U.S. Bank for $202,342.

PGI filed suit against Defendants. The amended complaint filed by PGI included in pertinent part the following counts: breach of warranty by Winfield Investments, acting as a "mere instrumentality of [Defendants] for fraudulent . . . purposes"; unjust enrichment; and fraud. In its unjust enrichment count, PGI argued: "In the alternative that this Court finds that the Defendants are not personally liable under the Warranty Deed for breach of warranty, the Defendants are not in privity of contract with PGI and are liable to PGI for unjust enrichment."

On February 28 and March 2, 2017, the trial court held a non-jury trial resulting in the final judgment we review. As we have previously indicated, we affirm without further discussion that part of the final judgment imposing individual liability on Defendants for breach of warranty. Therefore, the focus of this opinion will be the remaining counts.

As to the part of the final judgment finding Defendants liable for unjust enrichment, we reverse. Upon de novo review of the trial court's legal conclusions, the count of unjust enrichment cannot be upheld. "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); accord Hazen v. Cobb, 117 So. 853, 858 (Fla. 1928) ("The law will

4

not imply a contract where a valid express one exists.  This rule is supported by the great weight of authority.").

Regarding the fraud count, the trial court found Defendants liable based on three theories:  fraudulently misrepresenting in the warranty deed that the property was free from all encumbrances, fraudulently concealing the mortgage, and fraudulently promising to defend the title without intending to do so.  Regarding the final theory, we reverse because stipulations contained in a warranty deed, even if untrue, do not constitute fraud in the sale.  See Paine v. Kemp, 82 So. 53, 54 (Fla. 1919); cf. White v. Crandall, 143 So. 871, 879 (Fla. 1932) (holding that once a purchaser accepts a deed pursuant to a contract for sale, "the transaction is closed, and the purchaser is confined to his action for breach of the covenant").

Defendants contend that the mortgage was recorded in the public records and, therefore, knowledge of its existence should have been imputed to PGI.  Based on the facts and circumstances of this particular case, we conclude that the existence of the recorded mortgage was obvious to PGI and that the fraudulent misrepresentation or concealment of the mortgage by Defendants could not form the basis of a finding of fraud by the trial court.

In Butler v. Yusem, 44 So. 3d 102 (Fla. 2010), the Florida Supreme Court held:

> Justifiable reliance is not a necessary element of fraudulent misrepresentation.  As we have stated, there are four elements of fraudulent misrepresentation: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Johnson, 480 So. 2d at 627 (emphasis added).  This is consistent with our prior opinion in Besett, 389 So. 2d at 998, holding that in an action involving fraudulent

5

> misrepresentation, the buyers did not need to allege that they had investigated the truth of the misrepresentations because for this claim, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." As we have explained, "the policy behind our holding in Besett is to prohibit one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing." Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334, 336-37 (Fla. 1997).

44 So. 3d at 105. Therefore, although under Butler justifiable reliance was not a necessary element of fraudulent misrepresentation that PGI had to prove, because the mortgage in the instant case was recorded in the public records as a lien on the property, we believe that it was obvious to PGI under Besett v. Basnett, 389 So. 2d 995, 998 (Fla. 1980), and M/I Schottenstein Homes, Inc. v. Azam, 813 So. 2d 91, 95 (Fla. 2002). See Schottenstein, 813 So. 2d at 95 (holding that situations may exist when information within a parcel's chain of title renders certain misrepresentations regarding title obviously false because "an examination of these documents prior to a transfer of the real property is entirely expected").

We note that in Schottenstein, the Florida Supreme Court acknowledged that in Besett it adopted sections 540 and 541 of the Restatement (Second) of Torts. 813 So. 2d at 93. Section 540 provided in pertinent part that "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity . . . had he made an investigation." Besett, 389 So. 2d at 997 (quoting Restatement (Second) of Torts § 540 (Am. Law Inst. 1976)). On the other hand, section 541 provided that "[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Id.

6

(quoting Restatement (Second) of Torts § 541). The court also adopted a comment to section 541, which explained that the falsity of a misrepresentation is obvious if it would be made apparent by "a cursory examination or investigation." Id. (quoting Restatement (Second) of Torts § 541 cmt. a). As this court explained in Billington v. Ginn-La Pine Island, Ltd., 192 So. 3d 77, 81 n.4 (Fla. 5th DCA 2016), the adoption of these sections of the Restatement indicated that justifiable reliance was an essential element of fraudulent misrepresentation, and justifiable reliance likewise appeared to be an essential element under the holdings of Schottenstein and Johnson v. Davis, 480 So. 2d 625, 628 (Fla. 1985). See Johnson, 480 So. 2d at 628 ("[T]he Davises' reliance on the truth of the Johnsons' representation was justified . . . ."). However, the court in Butler did not say that it was overruling the holdings of those cases when it held that justifiable reliance was not an element of fraudulent misrepresentation. 44 So. 3d at 105. As this court noted in Billington, the Florida Supreme Court does not overrule itself sub silentio. 192 So. 3d at 81 n.4. Therefore, this court in Billington certified a question of great public importance: whether the decision in Butler meant to overrule prior decisions regarding the justifiable reliance requirement. Id. at 85. We likewise certify a similar question to the Florida Supreme Court as a matter of great public importance:

> DID THE COURT IN BUTLER OVERRULE THE DECISIONS IN BESETT, JOHNSON, AND SCHOTTENSTEIN BY HOLDING THAT JUSTIFIABLE RELIANCE IS NOT AN ESSENTIAL ELEMENT OF FRAUDULENT MISREPRESENTATION?

In conclusion, we affirm that part of the judgment finding Defendants individually liable to PGI for breach of warranty. We reverse the remainder of the judgment and

remand this case to the trial court to enter judgment in favor of PGI only for breach of warranty.


AFFIRMED in part; REVERSED in part; REMANDED; QUESTION CERTIFIED.

SAWAYA, PALMER and TORPY, JJ., concur.